**Benjamin Allen POPE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–84–0614–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 1, 1985.

Dougal C. Pope, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., James C. Brough, Kathy Giannaula, Harris County Asst. Dist. Attys., Houston, for appellee.

Before EVANS, C.J., and SAM BASS and COHEN, JJ.

## OPINION

EVANS, Chief Justice.

A jury convicted the appellant of the misdemeanor offense of unlawfully carrying a handgun and assessed his punishment at 6 months confinement.

In three grounds of error, the appellant contends that (a) his warrantless arrest was illegal; (b) that his oral admission to the investigating officer was inadmissible; and (c) that the state failed to prove a chain of custody establishing his possession of the weapon.

About 10 p.m., on June 1984, the appellant approached a security guard at an automobile dealership in southwest Houston. The appellant told the guard he had been robbed, and he asked the guard if he had seen anyone on the premises. The guard advised the appellant to notify the Houston Police Department, and the appellant replied that he was carrying something "to take care of the matter, and that he would in fact take care of it in his own way." The appellant then pulled out a magazine clip that had 9mm ammunition in it, and extracting one of the rounds handed it to the guard. The guard again suggested that the appellant call the police department, and the appellant called the man who had robbed him a name, and tapping his right leg, said he would handle it. The guard then left the appellant's presence for a few minutes to call the Houston Police Department. The guard returned and continued his conversation with the appellant. According to the guard, the appellant asked him what would happen if he had shot the man in the apartment and he had fallen outside. The appellant then said he was going home and call the police department. The appellant left the premises, and the guard last observed him walking down the street.

Two police officers in a patrol car responded to the guard's call within 5–10 minutes, and obtained the security guard's report of what happened. They were also given the appellant's physical description. A second police car then arrived on the scene and the officers in that car were verbally given the same information. The second police unit then drove down the street where the guard had last observed the appellant. A few minutes later, the officers in that car radioed back to the first unit that a car driven by a man matching the appellant's description, was heading in their direction. The first police unit turned on its overhead lights, and the officers placed their vehicle in a diagonal position across the street to block the path of the oncoming vehicle. The police officers, with

drawn weapons, ordered the appellant out of his car. One of the officers called to the appellant and asked, "Where is the gun?", and the appellant replied that it was in the automobile glove box. The second police unit had by this time parked their vehicle behind appellant's automobile, so that appellant was under observation by officers from both units. One of the officers from the first police unit approached the appellant's vehicle, and looked inside the front window. On the seat he saw a shoulder holster for a handgun, but no other evidence of a weapon. He then opened the glove compartment, which was closed but not locked, and found a semi-automatic 9mm pistol and a separate magazine clip loaded with 9mm ammunition. The appellant told the officer that he had been at his girlfriend's apartment, that he had been robbed and knocked unconscious, and that he was looking for the person who did it.

Appellant complains that his warrantless arrest was in violation of state law. He contends that the officers had no legal authority to stop his car as he legally drove it down a public street and that the pistol and his statements concerning it which followed immediately thereafter were fruits of the illegal arrest.

■ The burden of proving the legality of a warrantless arrest is upon the state. *Wilson v. State*, 621 S.W.2d 799, 804 (Tex. Crim.App.1981). It has been observed that the state law governing search and seizure is more protective of the defendant than is the United States Constitution. *Milton v. State*, 549 S.W.2d 190, 192 (Tex.Crim.App. 1977). The decisions of the United States Supreme Court construing the fourth amendment to the constitution do not control a decision as to whether an arrest is authorized under Texas law. *Id.* at 192.

■ Arrests made without warrant are generally governed by Chapter 14 of the Code of Criminal Procedure. The state contends only that the arrest was legal under article 14.01(b), which provides that a peace officer may arrest an offender without warrant for any offense committed in his presence or within his view. It is undis-puted that the appellant did not commit an offense within the presence of the peace officers. No pistol was seen by the officers before they stopped appellant's car, ordered him out of it, asked him for identification, and searched his glove compartment. A warrantless arrest or search must be justified by what is known to the police officers at the inception of the search and cannot be justified by evidence seized as a result of the arrest and search. *Colston v. State*, 511 S.W.2d 10, 13 (Tex.Crim. App.1974).

No other statutory provision in Chapter 14 or elsewhere has been relied on by the state in its brief as justification for the appellant's warrantless arrest.

■ We recognize the duties imposed on police officers to prevent threat and injury to persons or property. Tex.Code Crim.P. Ann. art. 6.05 (Vernon Supp.1985) provides:

> It is the duty of every peace officer, when he may have been informed in any manner that a threat has been made by one person to do some injury to himself or to the person or property of another, including the person or property of his spouse, to prevent the threat and injury, if within his powers; and, in order to do this, he may call in aid any number of citizens in his county. *He may take such measures as the person about to be injured might for the prevention of the offense.* (Emphasis supplied).

Article 6.05 expressly limits the peace officer to "such measures as the person about to be injured might use to prevent the offense." The statute authorizes a peace officer only to prevent a wrong from being committed or attempted and does not otherwise confer authority to arrest without a warrant. *Heath v. Boyd*, 141 Tex. 569, 175 S.W.2d 214, 217 (1943); *Allen v. State*, 66 S.W.2d 671, 673–74 (Tex.Crim. App.1902).

■ We also recognize that a temporary detention for purposes of investigation may be justified, even though the circumstances fall short of probable cause for arrest. *See Meeks v. State*, 653 S.W.2d 6,

12 (Tex.Crim.App.1983); *Schwartz v. State,* 635 S.W.2d 545 (Tex.Crim.App.1982); *Ebarb v. State,* 598 S.W.2d 842, 844 (Tex.Crim.App.1979); *see also Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Where justified by the circumstances, even an occupant of an automobile may be subjected to a brief investigatory detention. *Shaffer v. State,* 562 S.W.2d 853 (Tex.Crim.App.1978); *Armstrong v. State,* 550 S.W.2d 25, 30 (Tex.Crim.App.1976). But for such a detention to be lawful, the peace officer must have specific articulable facts which, in light of his experience and personal knowledge, together with other inferences from those facts, reasonably warrant the intrusion on the person being detained. *Meeks,* 653 S.W.2d at 12. The "specific facts" must be more than the officer's "mere hunch" that something is out of the ordinary, *Schwartz,* 635 S.W.2d at 547; *Johnson v. State,* 658 S.W.2d 623 (Tex.Crim.App.1983), and the officer must have a "particularized and objective suspicion of criminal activity" on the part of the detained person. *Hull v. State,* 613 S.W.2d 735, 739–40 (Tex.Crim.App.1981).

In this case, the police officers' investigative stop was based solely on the information received from the security guard at the automobile dealership. Although the police officers may have been warranted in relying upon the information given them by the guard, *see Ferguson v. State,* 573 S.W.2d 516 (Tex.Crim.App.1978); *Albert v. State,* 659 S.W.2d 41 (Tex.App.—Houston [14th Dist.] 1983), the information did not, standing alone, constitute an adequate basis for even a temporary detention of the appellant. *Compare, Williams v. State,* 629 S.W.2d 146 (Tex.App.—Dallas 1982), where an excited citizen informed the police officers at a convenience store that the suspect "had a gun."

Here, the security guard did not inform the officers that the appellant had a gun or that he had actually threatened to do harm to anyone. The guard's report to the officers suggested only that appellant might have a gun and possibly intended to use it.

Also, there was a considerable lapse of time between the appellant's initial statement to the security guard that he would "take care of the matter", and his last words, just before leaving the premises, that he was going home to call the police. When the appellant was next observed driving his automobile down the street, he was doing nothing to indicate any unlawful action. We find no evidence which would support the conclusion that the police officers had a particularized and objective suspicion that appellant was engaged or about to engage in any criminal activity.

We accordingly hold that the circumstances did not justify the appellant's detention, and we sustain his first ground of error. In view of our holding that the detention was not a lawful exercise of police power, we also hold that the appellant's subsequent oral admission and the fruits of the automobile search were inadmissible. *Johnson v. State,* 658 S.W.2d at 623; *Hull v. State,* 613 S.W.2d at 740; and *Davis v. State,* 576 S.W.2d 378, 381 (Tex.Crim.App.1978). We therefore sustain appellant's second ground of error. Because of this disposition, we need not consider the third ground.

The judgment of the trial court is reversed and the cause is remanded.