**John CRITTENDEN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 576–93.**

Court of Criminal Appeals of Texas, En Banc.

May 17, 1995.

---

Roy E. Greenwood, on appeal only, Austin, for appellant.

Ronald Earle, Dist. Atty., Philip A. Nelson, Jr., Asst. Dist. Atty., Robert Huttash, State's Atty., Austin, for State.

*OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW*

CLINTON, Judge.

Appellant pled nolo contendere to a charge of possession of controlled substance (heroin), and was sentenced in accordance with a plea bargain to seven years, probated. His conviction was affirmed by the Third Court of Appeals. *Crittenden v. State*, No. 91–2720 (Tex.App.—Austin, April 14, 1993) (unpublished). We granted discretionary review on a single ground, *viz:* "Did the court of appeals err in holding that the stop of appellant's vehicle, and his subsequent detention, was not a 'pretext arrest' under the provisions of Article I, Section 9 of the Texas Constitution?" Tex.R.App.Pro., Rule 200(c)(2).

*I.*

The parties do not dispute the facts. Austin Police Sergeant Duane McNeil was on patrol in East Austin when he received a radio dispatch requesting that he check on a suspicious white vehicle at 2513 East 11th Street. A resident had called to complain that the occupant of the vehicle was "possibly trying to buy drugs." McNeil found a white pickup truck parked at that address. Appellant was the driver and sole occupant of the pickup. McNeil and appellant conversed briefly. After appellant drove off, McNeil observed him make a right turn without giving a proper signal. At this point, McNeil was approached by a woman, who told him, "that was the vehicle." McNeil then pursued the truck and stopped it.

After the stop, the officer asked appellant for his driver's license and proof of insurance. Appellant was cooperative, but could not immediately find his insurance papers. McNeil asked him to step out of the vehicle; he then asked for consent to search his person. Appellant consented, the contraband which is the subject of this appeal was discovered, and appellant was subsequently arrested.[1] At a pretrial hearing McNeil testified that, although he did not carry a citation book with him in his patrol car, he had stopped appellant intending to give him a traffic citation. He also characterized the stop as a "kind of research-type situation."

Appellant complained on appeal that the stop was pretextual in this cause, and was thus illegal under both the Fourth Amendment and Article I, § 9 of the Texas Constitution. The court of appeals, speaking through our former Presiding Judge Onion, rejected his Fourth Amendment complaint, citing this Court's opinion in *Garcia v. State*, 827 S.W.2d 937 (Tex.Cr.App.1992). *Id.*, (Slip op. at 4). Appellant does not challenge the disposition of his Fourth Amendment claim here.

Turning to appellant's contention that the traffic stop was a pretext, and therefore ille-

---

1. At the pre-trial hearing, appellant denied that he consented to the search. However, his denial was contradicted by both McNeil's testimony and that of a backup officer, and the trial court

"state[d] on the record as a finding of fact [that] consent was asked for and given by the defendant for the search."

gal under Article I, § 9 of the Texas Constitution, the court of appeals responded:

> "Further, an issue of pretext stop is not raised simply because the police validly stop a vehicle for a traffic violation when they have a more generalized suspicion that the driver of the vehicle was involved in a separate crime. *Hamilton v. State*, 831 S.W.2d 326, 330 (Tex.Crim.App.1992); *Goodwin v. State*, 799 S.W.2d 719, 726 (Tex.Crim.App.1990). Because the facts of the instant case do not raise the issue of a pretext arrest, we need not address the constitutionality of the stop under Article I, Section 9 of the Texas Constitution. *Hamilton*, 831 S.W.2d at 330."

*Id.* Thus, the court of appeals seems at least nominally to have avoided the question whether the stop of appellant in this cause violated Article I, § 9.[2] We nevertheless granted appellant's petition for discretionary review in order to address the legality of so-called pretext stops under our state constitutional analog to the Fourth Amendment.

## II.

Whether Article I, § 9 admits of a pretext doctrine is not a wholly novel issue in this

Court. The cases discussing the pretext doctrine, or cited by this Court as support for the pretext doctrine, are legion.[3] After reviewing these cases, however, we are forced to admit, as Presiding Judge McCormick opined recently in a different context, that our efforts in this area have failed as "a model of clarity and concise legal analysis." *Lyon v. State*, 872 S.W.2d 732, 734 (Tex.Cr. App.1994).

As appellant and amicus curiae note, three "tests" have been used by American courts in the hotly debated context of pretextual seizures: the "subjective" test, the "objective" test, and the "modified objective" test.[4] The pivotal Texas case of *Black v. State*, 739 S.W.2d 240 (Tex.Cr.App.1987) has been cited as an example of a "subjective" approach; yet, nothing about our analysis in *Black* is inconsistent with a "modified objective" approach. We based our holding in *Black* in part on the Fifth Circuit's opinion in *Amador–Gonzalez v. United States*, 391 F.2d 308 (CA5 1968), another case which has been cited for its "subjective" approach. But *Amador–Gonzalez* was overruled in *United States v. Causey*, 834 F.2d 1179 (CA5 1987) (en banc), in which the Fifth Circuit adopted

---

**2.** The State Prosecuting Attorney contends that the question whether Article I, § 9 admits of a pretext doctrine is not before us in this cause. Because the court of appeals held on authority of *Hamilton* that the facts do not raise pretext in any event, the State Prosecuting Attorney argues, that issue was not decided by the court of appeals, and therefore is not ripe for our consideration. See e.g., *Lee v. State*, 791 S.W.2d 141 (Tex.Cr.App.1990). For reasons given *post*, however, we conclude that both this Court in *Hamilton*, and hence, the court of appeals in this cause, did in fact address the pretext issue under Article I, § 9, albeit not expressly but by necessary implication.

**3.** Our research reveals more than thirty cases from this Court that either address the pretext arrest/stop doctrine or that we have cited as authority for the doctrine. See *McDonald v. State*, 415 S.W.2d 201 (Tex.Cr.App.1967); *Adair v. State*, 427 S.W.2d 67 (Tex.Cr.App.1967); *Hall v. State*, 488 S.W.2d 788 (Tex.Cr.App.1973); *Talbert v. State*, 489 S.W.2d 309 (Tex.Cr.App.1973); *Gutierrez v. State*, 502 S.W.2d 746 (Tex.Cr.App. 1973); *Hampton v. State*, 511 S.W.2d 1 (Tex.Cr. App.1974); *Borner v. State*, 521 S.W.2d 852 (Tex. Cr.App.1975); *Maldonado v. State*, 528 S.W.2d 234 (Tex.Cr.App.1975); *Hooper v. State*, 533 S.W.2d 762 (Tex.Cr.App.1975) (opinion on rehearing); *Leighton v. State*, 544 S.W.2d 394 (Tex.

Cr.App.1976) (opinion on rehearing); *McDougald v. State*, 547 S.W.2d 40 (Tex.Cr.App.1977); *Faulkner v. State*, 549 S.W.2d 1 (Tex.Cr.App. 1976); *Dillard v. State*, 550 S.W.2d 45 (Tex.Cr. App.1977); *Fatemi v. State*, 558 S.W.2d 463 (Tex. Cr.App.1977); *White v. State*, 574 S.W.2d 546 (Tex.Cr.App.1979); *Evers v. State*, 576 S.W.2d 46 (Tex.Cr.App.1978); *Razo v. State*, 577 S.W.2d 709 (Tex.Cr.App.1979); *McMillan v. State*, 609 S.W.2d 784 (Tex.Cr.App.1980); *Armitage v. State*, 637 S.W.2d 936 (Tex.Cr.App.1982); *Dodson v. State*, 646 S.W.2d 177 (Tex.Cr.App.1983) (opinion on rehearing); *Bain v. State*, 677 S.W.2d 51 (Tex.Cr.App.1984); *Meeks v. State*, 692 S.W.2d 504 (Tex.Cr.App.1985); *Black v. State*, 739 S.W.2d 240 (Tex.Cr.App.1987); *Webb v. State*, 739 S.W.2d 802 (Tex.Cr.App.1987); *Boyle v. State*, 820 S.W.2d 122 (Tex.Cr.App.1989); *Goodwin v. State*, 799 S.W.2d 719 (Tex.Cr.App.1990); *Gordon v. State*, 801 S.W.2d 899 (Tex.Cr.App. 1990); *Garcia v. State*, 827 S.W.2d 937 (Tex.Cr. App.1992); *Hamilton v. State*, 831 S.W.2d 326 (Tex.Cr.App.1992); *Bobo v. State*, 843 S.W.2d 572 (Tex.Cr.App.1992); *Nelson v. State*, 848 S.W.2d 126 (Tex.Cr.App.1992).

**4.** Texas Criminal Defense Lawyers Association has filed an amicus curiae brief in this cause.

an "objective" approach to pretextual seizures. On the strength of *Causey*, a plurality of this Court then purported to overrule *Black*, in *Gordon v. State*, 801 S.W.2d 899 (Tex.Cr.App.1990) (plurality opinion).

Because *Gordon* was premised both on the Fourth Amendment and Article I, § 9 of the Texas constitution, it would seem to have answered the question before us today. But, as we noted later in *Garcia v. State*, 827 S.W.2d 937 (Tex.Cr.App.1992), because *Gordon* was a plurality opinion it could not operate to overrule established precedent. Although *Garcia* adopted the Fifth Circuit's objective approach to pretextual seizures under the Fourth Amendment, it expressly reserved the state constitutional question for another day. *Garcia*, supra, at 943 n. 8. The question before us today is thus one expressly left open by *Garcia*, supra, *viz:* How should we review claims of pretextual seizure brought pursuant to Article I, § 9 of the Texas Constitution?

### III.

█ A pretextual seizure, in the most general sense, is one that is effectuated for an ulterior (i.e., pretextual) motive. The three approaches courts have taken toward claims of pretextual seizure—the objective, subjective and modified objective—are merely different ways courts review a defendant's claim that a particular seizure was illegal because pretextual. The "subjective" and "objective" approaches represented by *Black* and *Causey*, both supra, are generally considered to be polar opposites. See *Garcia*, supra, at 942 (contrasting the "objective approach" with a "wholly subjective analysis"). Under an "objective" approach, a seizing officer's subjective motivation in effectuating a seizure is deemed irrelevant to the determination of whether the seizure was reasonable. This, of course, is nothing more than the complete abandonment of any sort of pretext doctrine; because an officer's "subjective intent" in effectuating a seizure is irrelevant, there can never be an illegal "pretext" for a seizure. See *United States v. Reeves*, 798 F.Supp. 1459, 1464 (E.D.Wash.1992) (objective approach "effectively eliminate[s] the pretext rule"). The subjective approach has

been less than fully developed. However, its basic premise is that "subjective intent" *is* relevant, even determinative, in gauging the reasonableness of a seizure. *Id.* The "modified objective" approach has been described in various ways, and under various names, but is most often summed up as a judicial inquiry into "not whether the officer *could* validly have made the stop but whether under the same circumstances a reasonable officer *would* have made the stop in the absence of an invalid purpose." *United States v. Smith*, 799 F.2d 704, 709 (CA11 1986); see also *United States v. Crotinger*, 928 F.2d 203, 206 (CA6 1991); *United States v. Guzman*, 864 F.2d 1512 (CA10 1988).

Both appellant and amicus curiae now urge us to reject the objective approach that we adopted to analyze claims of pretext seizures under the Fourth Amendment in *Garcia v. State*, supra, and to adopt instead a modified objective approach under Article I, § 9. We decline to do so. First, it is at least arguable that the Court has tacitly adopted a purely objective approach under Article I, § 9 already, in *Hamilton v. State*, supra. Even had we not, it would be anomalous, having found in *Garcia* that the decisions of the federal circuit courts that have adopted an objective standard are more persuasive than those adopting a modified objective test, to about-face and announce that a modified objective approach should be adopted for purposes of our own state constitutional analysis.

The court of appeals was able to avoid expressly deciding whether Article I, § 9 renders appellant's seizure unlawful by concluding that the facts as developed at the suppression hearing did not raise the issue of pretext stop. *Crittenden v. State*, supra (Slip op. at 4). Writing for the court, Judge Onion relied for this proposition upon this Court's opinions in *Hamilton v. State* and *Goodwin v. State*, both supra. Close scrutiny of those cases suggests, however, that we did not avoid the issue of pretext seizures so much as we simply concluded, *sub silentio*, that as long as the arresting officer made an objectively reasonable traffic stop, neither the Fourth Amendment nor Article I, § 9 mandates any inquiry into his subjective motivation.

In *Goodwin*, a police officer, although lacking articulable grounds for suspicion, nevertheless grew suspicious that the occupants of a car the defendant was riding in might be engaged in or about to engage in unlawful activity. He followed the car until it made a turn without signalling, and then stopped it, ostensibly for this minor traffic violation. The seizing officer denied from the witness stand, however, that he had been "looking for a reason to stop them so [he could] check them out." Goodwin claimed on appeal that this was an illegal pretext stop under the Fourth Amendment. Under the modified objective test, these facts would surely raise an issue of pretext seizure. Although the officer denied that his motivation for making the traffic stop was to "check out" his inarticulable hunch, the surrounding circumstances are sufficient to create an issue of fact whether that was in fact true. The question would then become whether, but for the illegitimate subjective motivation (if any), the officer would have made the traffic stop. Nevertheless, the Court concluded that the issue of pretext was not raised by the facts. We reasoned that because the officer "acted lawfully in stopping [the car] for failure to signal ... [the officer's] generalized suspicion of possible illegal activity ... did not invalidate a legal stop for a traffic violation." *Goodwin*, supra at 726. Thus, the Court apparently held that so long as the traffic stop was objectively justified, the officer's motivation for making it did not raise a Fourth Amendment issue. In essence, we adopted an objective approach to claims of pretext stop under the Fourth Amendment without expressly acknowledging we were doing so.[5]

In *Hamilton* we arguably did the same thing for purposes of Article I, § 9. There officers noticed a parked car that seemed out of place in the neighborhood they were patrolling. When a register check revealed the car belonged to a business, the officers decided to drive by the car again, but before they could, the car came at them in the wrong lane of traffic. The officers ordered appellant, the driver, to pull over. When he could not provide a license or proof of insurance, the officers decided to cite appellant for all of the above infractions. Moreover, because he would not give them definite information about where he lived or who owned the car, pursuant to what one of the officers testified was "proper police procedure," they arrested appellant so that he would be required to post a cash bond. On authority of *Goodwin* we reiterated the holding that police motivation will not vitiate an otherwise lawful traffic stop, and once again held that the facts therefore did not raise an issue of pretext stop. Because Hamilton argued under the aegis of Article I, § 9, rather than the Fourth Amendment, by citing *Goodwin* we seem to have adopted a purely objective test for purposes of Article I, § 9 as well.[6]

**5.** In fairness, there is an alternative, and perhaps in context, more likely interpretation of the Court's analysis in *Goodwin*. It may well be that by observing that generalized suspicion will not vitiate an otherwise valid traffic stop, the Court meant to distinguish traffic stops that are a subterfuge to allow police to check out inarticulable suspicions from those made to foster investigation of a reasonable suspicion or even probable cause. Such a distinction, if that is what the Court meant, however, would evince a profound misunderstanding of what a claim of illegal pretext is all about. An officer with reasonable suspicion or probable cause to suspect criminal activity is afoot does not need the additional justification of a traffic violation to make a lawful investigative detention. See *Bobo v. State*, 843 S.W.2d 572, 574–75 (Tex.Cr.App.1992). That an officer with reasonable suspicion also may have observed a traffic violation, and stopped a car for that reason *too*, would not under any of the tests for pretext render the stop illegal. It is, therefore, *only* when officers have only generalized (i.e., inarticulable) suspicion that the issue of pretext stop *can* be raised—not vice-versa, as this alternative reading of *Goodwin* tends to suggest.

**6.** Having thus resolved whether the evidence raised an issue of a pretextual *stop*, we next turned in *Hamilton* to the question whether the evidence raised an issue whether the full custodial *arrest* was an illegal pretext under Article I, § 9. In that context we concluded that pretext was not raised, but for an altogether different reason. Given the testimony that it was "proper police procedure" to effect an arrest under the circumstances, we held the evidence showed that any reasonable officer in the same position would have arrested Hamilton, and therefore no pretext was involved. This is, in effect, to measure pretext arrest, *vel non*, against the modified objective test, as our citation to § 1.4(e) of Professor LaFave's treatise in *Hamilton* underscores. 831 S.W.2d at 331.

Thus, *Hamilton* seems to have utilized a purely objective test to determine whether an allegedly

It appears, then, that neither *Goodwin* nor *Hamilton* truly avoided the issue of whether a pretext stop is constitutionally prohibited. Instead, they effectively decided that a stop will not be invalidated based on the subjective motivation of a police officer so long as there is an objectively valid basis for the stop. Each case thus appears to have implicitly, but necessarily, adopted a purely objective test for analyzing pretext stop claims. Because the court of appeals relied upon these cases for its own disposition in the instant cause, it essentially adopted that test too. Although nominally side-stepping the Article I, § 9 question, the court of appeals really held that there is no such thing as an illegal pretext stop under Article I, § 9.[7]

Given the way we disposed of the analogical Fourth Amendment question in *Garcia,* supra, we are constrained to agree. In *Garcia* we expressly rejected the modified objective approach. We rejected it not because we were constrained by Supreme Court precedent precisely on point—there is none. Rather, we rejected it for two reasons. First, we perceived the weight of authority among the federal circuit courts of appeals to

preponderate in favor of the objective test over either a modified objective or a subjective approach. 827 S.W.2d at 942. Second, and more importantly for present purposes, we opined that "the objective approach clearly makes more sense, and is more reasonable in terms of application," *id.,* at 943, and we expressly described the modified objective approach as "at worst unworkable and at best highly problematic[.]" *Id.,* at 942, & n. 7, at 942–43. Having adopted the objective approach under the Fourth Amendment, not because of binding precedent, but because it "makes more sense" than the alternatives, we can hardly justify concluding otherwise for purposes of Article I, § 9. Indeed, we would abuse our prerogative to construe even like provisions of the state and federal constitutions differently, see *Richardson v. State,* 865 S.W.2d 944, 948 (Tex.Cr.App.1993),[8] and stretch judicial credibility to the breaking point, were we somehow to hold that what "makes more sense" for purposes of the Fourth Amendment does not also "make more sense" under our own state constitutional analog.[9]

In the present context the Supreme Court has not authoritatively spoken. We adopted the objective approach in *Garcia* because we believed it to be the preferable interpretation of the Fourth Amendment among the alternatives we considered. Absent some significant difference in the text of the two provisions, or some historically documented difference in attitude between the respective drafters, there would be no apparent reason to prefer an interpretation of Article I, § 9 any different than our preferred interpretation of the Fourth Amendment. We will not read Article I, § 9 differently than the Fourth Amendment in a particular context simply because we *can.*

9. Judge Baird accuses us of adopting an objective test out of "judicial convenience," whatever it is exactly he means by that. Dissenting op. at 674, 676–677, 679–680, and 681. We simply cannot credit his suggestion that the instant writer would engage in what he calls "a transparent attempt to avoid mature deliberation and thoughtful resolution of the issue presented." *Id.,* at 681. Having himself engaged in what we have no doubt was "mature deliberation" of the issue, Judge Baird argues that an objective test should be rejected because it tolerates "the use of a valid traffic stop as a pretext to search for evidence of a greater crime[,]" and that a search under these circumstances "is unreasonable" for purposes of Article I, § 9. *Id.,* at 679. Of course, "reasonableness" is as much the linchpin

pretextual *stop* was unlawful under Article I, § 9, but a modified objective test to determine whether an allegedly pretextual *arrest* was violative of that same state constitutional provision. Why we should treat a claim of pretext stop under a different standard than we would analyze a claim of pretext arrest is something that, frankly, we cannot now explain. It is therefore impossible to say definitively that *Hamilton* stands for the proposition that any claim of pretext seizure should be measured under the objective rather than the modified objective approach under Article I, § 9.

7. Thus we reject the State Prosecuting Attorney's contention that the issue is not raised in this cause. See n. 2, *ante.*

8. In *Richardson* we were called upon to decide whether use of a pen register could ever constitute a "search" under Article I, § 9. The Supreme Court had authoritatively held that a pen register *is not a search for Fourth Amendment purposes, in *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). We were persuaded by the weight and persuasiveness of critical and judicial authority that the Supreme Court was wrong to conclude in *Smith* that there was no objectively reasonable expectation of privacy in the numbers one dials on the telephone. We therefore exercised our prerogative to construe Article I, § 9 differently than the Supreme Court had construed the Fourth Amendment.

We therefore hold, instead, that an objectively valid traffic stop is not unlawful under Article I, § 9, just because the detaining officer had some ulterior motive for making it. Because that is what the court of appeals effectively held in this cause, we affirm its judgment.

MALONEY, J., concurs in the result.

OVERSTREET, J., dissents.

BAIRD, Judge, Dissenting

Believing judicial convenience should not be the controlling factor when determining whether the Texas Constitution provides greater protection than the United States Constitution, I dissent.[1]

## I.

A pretext arrest occurs when an individual is validly stopped or arrested for one offense only because law enforcement officials desire to investigate that individual for a different offense—i.e., an offense for which they do not have valid legal grounds to stop and arrest. *Garcia v. State,* 827 S.W.2d 937, 939–940 (Tex.Cr.App.1992).

In *Black v. State,* 739 S.W.2d 240 (Tex.Cr.App.1987), homicide detectives suspected Black of murder but lacked sufficient information to bring charges. After observing Black commit several traffic violations, detectives arrested Black in order to question him about the murder to which Black subsequently confessed. Black contended his confession was obtained in violation of the Fourth Amendment because his arrest for the traffic violations was a pretext to interrogate him about the murder.

To resolve Black's claim we relied upon *Amador–Gonzalez v. United States,* 391 F.2d 308 (5th Cir.1968), where the Fifth Circuit held an arrest pretextual. In so doing, the Court relied upon the following factors: the defendant was under surveillance as a narcotics suspect; the officer's admission that the real reason for the stop was to search for narcotics; the fact that the officer did not normally make traffic arrests and had no traffic citation book; the fact that no traffic citation was issued at the time of arrest; and, the delay between the observation of the traffic violation and the stop. The Fifth Circuit utilized what has been termed the "subjective" standard of review. This standard for reviewing claims of pretextual arrests focuses solely upon subjective elements, most notably, the arresting officer's motive to make the arrest. *Garcia,* 827 S.W.2d at 942; *and, Black,* 739 S.W.2d at 244–245. Applying the same *Amador–Gonzalez* factors in *Black,* we determined Black's arrest was pretextual and held the Fourth Amendment prohibited the admission of any evidence discovered as a result of the arrest. *Black,* 739 S.W.2d at 244.–245.[2]

In *United States v. Causey,* 834 F.2d 1179 (5th Cir.1979), the Fifth Circuit reversed *Amador–Gonzalez* and essentially abolished the pretext arrest doctrine, explaining:

> In the matter of religious conviction, Elizabeth the Great is said to have remarked that she would make no windows into the minds of men who served her loyally. The relevant principle of the Supreme Court is likewise: so long as police do no more than they are objectively authorized and legally permitted to do, their

of Fourth Amendment analysis as it is of our own state constitutional analog. Yet Judge Baird presumably believed that a pretext arrest was reasonable enough under the Fourth Amendment, for he joined the Court's opinion in *Garcia* without reservation. (The instant writer did not.) Certainly Judge Baird's view in *Garcia* was not dictated by Supreme Court precedent. See n. 8, *ante.* The opportunity for "thoughtful resolution" came and went when *Garcia* was decided. We cannot hold that what this Court believed was reasonable under the Fourth Amendment is somehow not reasonable under Article I, § 9.

1. Judge Clinton appears perplexed with the use of the phrase "judicial convenience." *Ante,* 899

S.W.2d at 661, n. 9. However, the phrase as used herein is consistent with Judge Clinton's criticism of the lead opinion in *Gabriel v. State,* 900 S.W.2d 721 (Tex.Cr.App.1995) (Clinton, J., concurring).

2. A plurality of the Court purportedly overruled *Black* in *Gordon v. State,* 801 S.W.2d 899 (Tex.Cr.App.1990). While *Gordon* recognized a conflict between federal and state case law concerning the appropriate standard of review for pretext arrest claims, without a majority vote, *Gordon* did not resolve the conflict.

motives in doing so are irrelevant, and held not subject to inquiry.

*Id.,* 834 F.2d at 1184. Thus, in *Causey,* the Fifth Circuit adopted the "objective" standard to review claims of pretextual arrests. Several other circuits have done likewise. *See, United States v. Mitchell,* 951 F.2d 1291 (D.C.Cir.1991); *United States v. Cummins,* 920 F.2d 498 (8th Cir.1990); *United States v. Trigg,* 878 F.2d 1037 (7th Cir.1989); *United States v. Nersesian,* 824 F.2d 1294 (2nd Cir. 1987); *United States v. Hawkins,* 811 F.2d 210 (3rd Cir.1987); *and, United States v. Pringle,* 751 F.2d 419 (1st Cir.1984).

However, several federal circuits have rejected the objective standard and instead adopted the "modified objective" standard to review claims of pretextual arrests. *United States v. Cannon,* 29 F.3d 472, 476 (9th Cir. 1994); *United States v. Smith,* 799 F.2d 704, 708 (11th Cir.1986); *United States v. Crotinger,* 928 F.2d 203, 206 (6th Cir.1991); *and, United States v. Guzman,* 864 F.2d 1512 (10th Cir.1988). Under the modified-objective standard the proper inquiry is not whether the officer *could* validly have made the stop but whether under the same circumstances a reasonable officer *would* have made the stop in the absence of the invalid purpose. *Smith,* 799 F.2d at 709.

In *Garcia v. State,* 827 S.W.2d 937, 940 (Tex.Cr.App.1992), we overruled *Black* because its Fourth Amendment analysis was predicated on *Amador–Gonzalez,* which was overruled by *Causey.* Although we noted the split between the federal circuits over the appropriate standard to review pretext arrest claims, we adopted the "objective" standard of review to review such claims under the Fourth Amendment. *Garcia,* 827 S.W.2d at 942. However, we specifically noted that no claim had been made under art. I, § 9 of the Texas Constitution. *Id.,* 827 S.W.2d at 943 n. 8.[3]

## II.

Today, we are asked to resolve the question unanswered by *Garcia:* Does art. I, § 9 of the Texas Constitution provide greater protection against a pretext arrest than the Fourth Amendment? Unwilling to expend the effort necessary to conduct the proper analysis, the majority holds the question was answered in *Goodwin v. State,* 799 S.W.2d 719 (Tex.Cr.App.1990), and, *Hamilton v. State,* 831 S.W.2d 326 (Tex.Cr.App.1992). *Ante,* 899 S.W.2d at 671–672 ("[i]t is at least arguable that the Court has tacitly adopted a purely objective approach under Article I, § 9 ...."). The majority insists we "implicitly, but necessarily, adopted a purely objective test for analyzing pretext stop claims" under art. I, § 9. *Ante,* 899 S.W.2d at 673.

Nothing could be farther from the truth. In both *Goodwin* and *Hamilton,* we expressly rejected the opportunity to undertake an art. I, § 9 analysis. In *Goodwin,* we stated:

In his brief before this Court, appellant cites Article I, § 9 of the Texas Constitution. However, because appellant provides

---

3. Judge Clinton criticizes me for voting for the majority opinion in *Garcia. Ante,* 899 S.W.2d at 661, n. 9. According to Judge Clinton, with *Garcia* "came and went" the opportunity for thoughtful resolution of whether art. I, § 9 provides greater protection than the Fourth Amendment. This is a curious statement for several reasons. First, *Garcia* is wholly consistent with our Fourth Amendment analysis of claims of pretext arrests. *Black,* was a Fourth Amendment case predicated upon the opinion of the Fifth Circuit in *Amador–Gonzalez.* When *Amador–Gonzalez* was overruled in *Causey,* the Fourth Amendment underpinnings of *Black* dissolved. After *Causey,* our adherence to the Fourth Amendment standard announced in *Black* would have been absurd.

Second, our statements in *Garcia* and *Bobo v. State,* 843 S.W.2d 572 (Tex.Cr.App.1992), make it clear a majority of this Court believed the instant issue was unresolved. Indeed, that is why we granted the petitions in *Bobo* and the instant case. Were Judge Clinton's reading of *Garcia* correct, the instant petition should have been refused and should now be dismissed as improvidently granted.

Finally, if in *Garcia* the time "came and went" to decide the art. I, § 9 issue, then why did Judge Clinton dissent? Unable to articulate even a single sentence to express his disapproval of the opinion, his dissent was silent. If "the objective approach clearly makes more sense, and is more reasonable in terms of application," *ante,* 899 S.W.2d at 673, Judge Clinton should have joined the majority opinion in *Garcia.* Moreover, if the reasoning in *Garcia* was so compelling that it resolved *both* the Fourth Amendment and the art. I, § 9 issues, we would not have reserved the instant issue for later resolution.

no argument or authority as to the protection provided by the Texas Constitution, we consider the point inadequately briefed and *will not address it.*

*Goodwin,* 799 S.W.2d at 723–724, n. 1.[4] In *Hamilton,* we stated:

The second issue raised by the State is whether Article I, Section 9 of our Constitution provides greater protection from pretext arrests than the Fourth Amendment.... *We do not believe, however, that it is either necessary or appropriate to resolve this issue* since the facts of this case cannot be construed as constituting a pretext arrest or stop.

*Hamilton,* 831 S.W.2d at 330. Thus, though the majority doggedly maintains otherwise, *Goodwin* and *Hamilton* did not implicitly adopt the objective test. To the contrary, those cases *expressly* avoided the question (as noted above, *Hamilton* was *not* even a pretext arrest case). The majority intentionally disregards the Court's express language in a disingenuous effort to support its result.

Moreover, the majority's assertion that *Goodwin* and *Hamilton* "sub silentio" adopted the objective standard under art. I, § 9, *Ante,* 899 S.W.2d at 671, fails for an additional reason. In *Bobo v. State,* 843 S.W.2d 572 (Tex.Cr.App.1992), we granted review to determine the continued viability of the pretext arrest doctrine under the Texas Constitution. *Id.,* at 574. However, we later decided *Bobo* was not the appropriate case to resolve the issue, and specifically reserved the issue for another day. *Ibid.* Because *Bobo* was decided after *Goodwin* and *Hamilton,* the latter cases cannot be read to adopt the objective standard for evaluating claims of pretext arrests. To make this assertion, when the issue had been expressly reserved in *Garcia* and *Bobo* is to deliberately misstate our precedent. Such an intentional mischaracterization of our earlier opinions should not be sanctioned by this Court.

Having devoted the substantial portion of its opinion attempting to convince the reader that we did not mean what we expressly stated in *Goodwin* and *Hamilton,* the majority's remaining analysis is cursory at best. Relying upon the reasoning in *Garcia,* the majority contends the objective standard should be adopted for pretext arrest claims under art. I, § 9 because "the objective approach clearly makes more sense, and is more reasonable in terms of application." *Ante,* 899 S.W.2d 673 (quoting *Garcia,* 827 S.W.2d at 943).

## III.

We are not compelled to limit the rights guaranteed by the Texas Constitution to those provided in the United States Constitution. *Heitman v. State,* 815 S.W.2d 681, 691 (Tex.Cr.App.1991). *See also, PruneYard Shopping Center v. Robins,* 447 U.S. 74, 81, 100 S.Ct. 2035, 2040, 64 L.Ed.2d 741 (1980); *and, Cooper v. California,* 386 U.S. 58, 62, 87 S.Ct. 788, 791, 17 L.Ed.2d 730 (1967). Indeed, in *Heitman* we held art. I, § 9 may provide greater protection than the Fourth Amendment. *Id.,* 815 S.W.2d at 690. Since *Heitman,* we have found greater protection on two occasions. *Richardson v. State,* 865 S.W.2d 944 (Tex.Cr.App.1993); *and, Autran v. State,* 887 S.W.2d 31 (Tex.Cr.App.1994) (plurality opinion).

In *Richardson,* we considered whether the installation of a pen register constituted a search under art. I, § 9. The installation and use of a pen register is not a search under the Fourth Amendment. *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). In our consideration of art. I, § 9, and whether it provided greater protection than the Fourth Amendment, we considered a number of factors including: the decisions of comparable state jurisdictions, scholarly criticism of the Supreme Court, and the subjective expectations of privacy in spite of a limited, confidential disclosure. *Richardson,* 865 S.W.2d at 949–953. We then departed from established Fourth Amendment jurisprudence and held the installation of a pen register may constitute a search under art. I, § 9. *Id.,* 865 S.W.2d at 953–954.

In *Autran,* we considered whether police officers may, under art. I, § 9, lawfully inventory the contents of closed containers

---

**4.** All emphasis is supplied unless otherwise indicated.

found in a vehicle. *Id.,* 887 S.W.2d at 42. The Fourth Amendment permits such an inventory so long as the officer followed departmental policy or, the search furthered the purposes of an inventory. *Florida v. Wells,* 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990). To determine whether art. I, § 9 provided greater protection than the Fourth Amendment, we considered several factors: the derivation of the Texas Constitution from not only the Fourth Amendment, but from other state constitutions as well; the intent of the framers of our constitution; the history and application of our constitutional provision; the comparable jurisprudence from other states; and, the practical policy considerations implicated by the issue before the Court. *Autran,* 887 S.W.2d at 37–41. We concluded art. I, § 9 provided a greater privacy interest in closed containers than the Fourth Amendment. Thus, an inventory of a closed container was not presumed reasonable under art. I, § 9 simply because an officer followed departmental policy. *Id.,* 887 S.W.2d at 42. Accordingly, *Richardson* and *Autran* provide frameworks to determine when the Texas Constitution provides greater protection than its federal counterpart.

The inquiry into whether our State Constitution provides greater protection than its Federal counterpart is no easy task and the resolution of such an issue should not be taken lightly. Yet in arriving at today's decision, the majority ignores the framework utilized by *Richardson* and *Autran.* Instead, the majority forgoes mature deliberation and resolves this important issue on the basis of judicial convenience—the objective standard is "easier" to apply. *Ante,* 899 S.W.2d at 673. Thus, the majority elevates judicial convenience over all of the factors previously utilized when making an independent constitutional interpretation.[5] The rights guaranteed by our State Constitution should be determined by an analysis more comprehensive than simply which standard is more convenient or would make the Court's job easier. This Court's function as final interpreter of the State Constitution and guarantor of civil liberties demands more from us and we should not shirk our responsibilities simply to alleviate those burdens. As Oliver Wendall Holmes once stated, "[i]f justice requires [a] fact to be ascertained, the difficulty in doing so is no ground for refusing to try." O.W. Holmes, The Common Law 48 (1881).

### IV.

Rather than taking the easy way out, principled resolution of this issue requires consideration the following factors: comparable jurisprudence, relevant scholarly articles, the history and application of the pretext arrest doctrine, as well as practical policy considerations.

### A.

The majority ignores the role of the pretext arrest doctrine in search and seizure jurisprudence. The pretext arrest doctrine is premised upon a constitutional intention to deter arbitrary and warrantless searches or seizures. *Payton v. New York,* 445 U.S. 573, 583, n. 21, 100 S.Ct. 1371, 1378, n. 21, 63 L.Ed.2d 639 (1980); *Delaware v. Prouse,* 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979) (Fourth Amendment intended to restrict police discretion "in order to safeguard the privacy and security of individuals against arbitrary invasions."); *Chimel v. California,* 395 U.S. 752, 761, 89 S.Ct. 2034, 2039, 23 L.Ed.2d 685 (1969); *Heitman,* 815 S.W.2d at 682; *and, Kolb v. State,* 532 S.W.2d 87, 89 (Tex.Cr.App.1976). *See also,* Barbara Salken, *The General Warrant of the Twentieth Century? A Fourth Amendment Solution to Unchecked Discretion to Arrest for Traffic Offenses,* 62 Temp.L.Rev. 221, 254 (Spring 1989) ("The fourth amendment was designed to prevent the arbitrary and indiscriminate searches permitted by general warrants and writs of assistance.") These constitutional protections are threatened when an officer makes what purports to be a lawful arrest in order to circumvent the con-

---

5. I must confess this is somewhat surprising. Judge Clinton, speaking for the majority, simply ignores the independent examination he performed in *Richardson,* 865 S.W.2d 944 (Tex.Cr. App.1993). Of all the factors considered in *Richardson,* judicial convenience was not among them. *Id.,* 865 S.W.2d at 949–953.

stitutional requirement of a search warrant supported by probable cause. *See, United States v. Trigg*, 878 F.2d 1037, 1039 (7th Cir.1989). As one commentator explained:

> ... The [Fourth] amendment was designed to safeguard the privacy and security of individuals against arbitrary government invasions, and to prevent government abuse of power and resulting oppression. Pretextual police conduct implicates both of these policies.

Ed Aro, Note, *The Pretext Problem Revisited: A Doctrinal Exploration of Bad Faith in Search and Seizure Cases*, 70 B.U.L.Rev. 111, 125–126 (1990).[6]

Under the pretext arrest doctrine, an officer who suspects criminal activity, but lacks probable cause to support his suspicion, may not arrest a suspect on a minor violation in order to avoid the constitutional requirement of a warrant. Instead, the officer must meet the constitutional requirements for a warrantless arrest. *See, Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct 1319, 1325, 75 L.Ed.2d 229 (1983) ("The [Fourth] Amendment's protection is not diluted in those situations where it has been determined that legitimate law enforcement interests justify a warrantless search: the search must be limited in scope to that which is justified by the particular purposes served by the exception."). *See also, Mincey v. Arizona*, 437 U.S. 385, 393, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290 (1978); *Terry v. Ohio*, 392 U.S. 1, 25–26, 88 S.Ct. 1868, 1882, 20 L.Ed.2d 889 (1968); *and, Bass v. State*, 732 S.W.2d 632, 635 (Tex. Cr.App.1987) ("A warrantless search must be strictly circumscribed by the exigencies which justify its initiation."). The pretext arrest doctrine operates to deny unethical peace officers the means to justify an otherwise unconstitutional arrest.[7]

The adoption of the objective standard to review claims of pretextual arrests will prevent judicial review of the arbitrary use of power by police officers. A pretextual arrest typically stems from the exercise of an officer's discretionary authority, such as a traffic stop. The objective standard precludes review of the reasons behind the traffic stop as well as the actions committed by the officer in conducting a stop. *Guzman*, 864 F.2d at 1516; *and, State v. Chapin*, 75 Wash.App. 460, 879 P.2d 300, 304 (Div. 1 1994). Thus the objective standard precludes our examination of whether the arrest resulted from

---

**6.** The Supreme Court has expressed concern over whether objectively valid police conduct will exonerate a subjectively invalid motive. *See, Steagald v. United States*, 451 U.S. 204, 215, 101 S.Ct. 1642, 1649, 68 L.Ed.2d 38 (1981) (arrest warrant will not justify entry into third party's home because that warrant may be used as pretext to search); *Colorado v. Bannister*, 449 U.S. 1, 4 n. 2, 101 S.Ct. 42, 44 n. 4, 38 L.Ed.2d 427 (1980) (no evidence traffic citation issued as pretext); *United States v. Robinson*, 414 U.S. 218, 218 n. 2, 94 S.Ct. 494, 494 n. 2, 38 L.Ed.2d 427 (1973) (Powell, J., concurring) (validity of custodial arrest would be different if there were evidence arrest was pretextual); *Id.*, 414 U.S. at 248, 94 S.Ct. at 482 (Marshall, J., dissenting); *Gustafson v. Florida*, 414 U.S. 260, 266–267, 94 S.Ct. 488, 492, 38 L.Ed.2d 456 (1973) (Stewart, J., concurring) (if petitioner had claimed his arrest for minor traffic offense was pretext a persuasive claim for relief might have been made); *Abel v. United States*, 362 U.S. 217, 226, 230, 80 S.Ct. 683, 690, 692, 4 L.Ed.2d 668 (1960) (an administrative warrant to search may not be used to search for evidence of criminal activity); *Jones v. United States*, 357 U.S. 493, 499–500, 78 S.Ct. 1253, 1257–1258, 2 L.Ed.2d 1514 (1958) (a permissible search incident to arrest becomes unconstitutional when no probable cause exists); *and, United States v. Lefkowitz*, 285 U.S. 452, 467, 52 S.Ct. 420, 424, 76 L.Ed. 877 (1932). *See*

*also, Florida v. Wells*, 495 U.S. 1, 4, 110 S.Ct. 1632, 1635, 109 L.Ed.2d 1 (1990) ("[A]n inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence."); *and, Texas v. Brown*, 460 U.S. 730, 737–738, 743, 103 S.Ct. 1535, 1541, 1543, 75 L.Ed.2d 502 (1983) (Under "plain view" doctrine, "the officer [police] must discover incriminating evidence 'inadvertently' which is to say, he [they] may not 'know in advance the location of [certain] evidence and intend to seize it,' relying on the plain view doctrine only as a pretext [pretense].").

**7.** As one commentator noted, employing the power to arrest for a minor offense as a pretext

> ... to investigate a major crime is unconstitutional because the power to intrude is restricted to the investigation of the minor offense. Just as the fourth amendment limits the power given police to search to the minimum extent necessary, the use of probable cause for minor offenses may not be abused for purposes unrelated to the offense.

Daniel Jonas, Comment, *Pretext Searches and the Fourth Amendment: Unconstitutional Abuses of Power*, 137 U.Penn.L.Rev. 1791, 1822 (1989) (footnote omitted).

standard police procedures, or whether it was a pretext to allow an investigation greater than that allowed under our Constitution. Under the majority opinion, the officer need only "make [his] conduct appear (objectively) as if it is lawful" in order to avoid the exclusionary measures of art. I, § 9. Burkoff, 66 U.Det.L.Rev. at 377.[8]

### B.

As a matter of policy, the pretext arrest doctrine should be retained. The adoption of the objective standard and the resulting abolition of the pretext arrest doctrine, ignores the requirement that police conduct be reasonable. In essence, the purpose of the pretext arrest doctrine is to deter police from using *lawful* authority to detain a person for a minor offense in order to search for evidence of a more serious one. The majority's focus upon a police officer's *lawful* conduct is premised on the assumption that the conduct is also reasonable. *See, Garcia,* 827 S.W.2d at 944 ("... the police officers, stop and detention of appellee for a traffic violation was reasonable under Fourth Amendment principles...."). Yet, *lawful* police conduct may not always be *reasonable.* Art. I, § 9 prohibits *unreasonable* searches and seizures. *Giacona v. State,* 372 S.W.2d 328, 333 (Tex.Cr.App.1962). The determination of whether a search is constitutionally reasonable should not depend not upon judicial convenience, but upon the actual circumstances under which the search is conducted. *Taylor v. State,* 421 S.W.2d 403, 406 (Tex.Cr. App.1967). The pretext arrest doctrine recognizes that lawful police authority may at times be unreasonably exercised. And the use of a valid traffic stop as a pretext to search for evidence of a greater crime is unreasonable. Indeed, it is

analogous to the situation faced by eighteenth century English and colonists when the *power to search for evidence of a certain crime was used in a manner expanding the search beyond its legitimate scope....* The moral outrage arises from the abuse of the legal process. *Power is being used for reasons other than those for which it was granted.*

Jonas, 137 U.Penn.L.Rev. at 1817. In its rush to abolish the pretext arrest doctrine, the majority also abolishes our Constitutional requirement that every arrest and search be reasonable.

Thus the abolition of the pretext arrest doctrine serves only to protect the arbitrary and abusive use of police authority. Indeed,

thousands of everyday citizens who violate minor traffic regulations would be subject to unfettered police discretion as to whom to stop.... [I]n the absence of standardized police procedures that limit discretion, whether we are ... stopped and subjected to lengthy and intrusive interrogation when we forget to wear our seat belts, turns on no more than "the state of the digestion of any officer who stops us, or, more likely, upon our obsequiousness, the price of our automobiles, the formality of our dress, the shortness of our hair or the color of our skin."

*Guzman,* 864 F.2d at 1516 (quoting Amsterdam, *Perspectives on the Fourth Amendment,* 58 Minn.L.Rev. 349, 416 (1974)).

### V.

### A.

I do not advocate the adoption of the subjective standard to review claims of pretextual arrests because both the purely subjective and the purely objective standards allow peace officers to escape judicial review of their conduct.[9] Rather, I advocate using an

---

**8.** But as Professor Burkoff explained:

... the availability of an inquiry into the motives of searching or arresting law enforcement officers is not only desirable, but critically necessary in order to insure that law enforcement officers generally will be deterred, through the application of the exclusionary rule, from engaging in pretextual fourth amendment activity.

Burkoff, 66 U.Det.L.R. at 373. *See also,* Aro, 70 B.U.L.Rev. at 151–152.

**9.** Under a purely objective standard we never review the officer's intent behind a stop because if the stop is legal, our analysis ends. Similarly, under the purely subjective standard an officer may simply articulate a legitimate reason different from the one which motivated the arrest. *See, United States v. Arra,* 630 F.2d 836, 845, n. 12 (1st Cir.1980); *Garcia,* 827 S.W.2d at 944; *and,* W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment, § 5.2(e) at 459 (2d ed. 1987). Moreover, because a purely subjec-

objective review which considers the officer's subjective motive in making the arrest. Aro, 70 B.U.L.Rev. at 147 n. 215, 152, 166–167; and, Burkoff, 66 U.Det.L.R. at 373. Accordingly, I believe the constitutional concerns upon which the pretext arrest doctrine is premised are best addressed by the adoption of the "modified objective" standard of review. See, Part I., supra, and, United States v. Smith, 799 F.2d 704, 708 (11th Cir.1986). Admittedly, this standard is less convenient for the Court to apply, and requires a more detailed analysis than the Court performs today because the standard requires the Court give at least partial consideration to the officer's motives in making an arrest. Under this modified objective standard, the proper inquiry is not whether the officer could validly have made the arrest but whether under the same circumstances a reasonable officer would have made the arrest in the absence of the invalid purpose. Smith, 799 F.2d at 709. See also, Guzman, 864 F.2d at 1517.

Moreover, the modified objective standard has been found to be workable and effective in deterring the pretextual use of police authority by the federal and state jurisdictions which have adopted it. See, Guzman, 864 F.2d at 1517; United States v. Crotinger, 928 F.2d 203, 206 (6th Cir.1991); Smith, 799 F.2d at 711; United States v. Miller, 821 F.2d 546, 549 (11th Cir.1987); United States v. Valdez, 931 F.2d 1448, 1451 (11th Cir.1991); Terrell v. Petrie, 763 F.Supp. 1342, 1345–1346 (E.D.Va.1991); State v. Haskell, 645 A.2d 619, 621 (Me.1994); Chapin, 879 P.2d at 303; State v. Lara, No. A–93–799, 1993 WL 527872, at *4 (Neb.App. Dec. 21, 1993); State v. Hunter, 107 N.C.App. 402, 420 S.E.2d 700, 703 (1992); Commonwealth v. Lopez, 415 Pa.Super. 252, 609 A.2d 177, 181–182 (1992); State v. Morocco, 99 N.C.App. 421, 393 S.E.2d 545, 548 (1990); Kehoe v. State, 521 So.2d 1094, 1097 (Fla.1988); Limonja v. Com., 7 Va.App. 416, 375 S.E.2d 12, 15–16 (1988); Tarwid v. State, 184 Ga.App. 853, 363 S.E.2d 63, 64–65 (1987); and, Brown v. State, 738 P.2d 1092, 1095–1096 (Wyo.1987). Addi-

tionally, several scholarly articles propose the modified objective standard to review pretextual stops and arrests. See, Butterfoss, 79 Ky.L.J. at 57–60 (modified objective test most suitable to regulate easily fabricated pretext arrests, such as traffic stops); Aro, 70 B.U.L.Rev. at 147–151, 165–168; Burkoff, 66 U.Det.L.R. at 373; and, Matthew S. Crider, Case Note: State v. Haskell, 645 A.2d 619 (Me.1994), 36 S.Tex.L.Rev. 629, 647–654 (1995).

### B.

Turning to the instant case, I would find the arrest pretextual. Austin Police Sergeant Duane McNeil responded to a complaint of a male in a "suspicious vehicle ... possibly trying to buy drugs...." When McNeil observed appellant in a parked truck which matched the vehicle's description, McNeil asked appellant "what was going on." Appellant responded he was out of gas. Moments later, appellant drove away and turned right, failing to use a turn signal. At this time, a citizen informed McNeil that appellant was the subject of the complaint. McNeil pursued and ultimately stopped appellant. McNeil stated he stopped appellant for making a turn without signaling, but he "felt this was something drug-related." McNeil described the stop as a "kind of research-type situation." After appellant was unable to produce proof of insurance, McNeil asked to search appellant's pockets. With appellant's consent, McNeil removed a syringe from appellant's shirt pocket and heroin from appellant's pants. McNeil then arrested appellant for possession of a controlled substance. Finally, despite McNeil's stated intention to stop for failure to use his turn signal, McNeil did not have a traffic citation book in his possession. McNeil admitted he would have had to call another officer in order to issue appellant a traffic citation.

It is readily apparent that McNeil suspected appellant was involved in illegal drug activity. Nevertheless, McNeil's suspicions

---

tive standard declares illegal any arrest in which an ulterior motive accompanies a valid one, the standard has the inadvertent effect of shielding those suspected of crimes from otherwise valid

arrests. Cf., Edwin Butterfoss, The Importance of Ulterior Motives and Fabrications in the Supreme Court's Fourth Amendment Pretext Doctrine, 79 Ky.L.J. 1, 51 (1990–1991).

alone were insufficient to establish probable cause to stop appellant. *See Amores v. State*, 816 S.W.2d 407, 413–415 (Tex.Cr.App. 1991) (officer lacked probable cause to arrest based on information conveyed by radio dispatcher); *and, Pope v. State* 695 S.W.2d 341, 344 (Tex.App.—Houston [1st Dist.] 1985) (officer lacked probable cause to arrest based on complainant's statement to police that the defendant "might have a gun and possibly intended to use it."). McNeil used the failure to signal as a pretext to stop and search appellant for such drug activity—a search which otherwise lacked probable cause.

Under the modified objective standard, a reasonable police officer, without a traffic citation book and absent McNeil's illegal purpose, would not have stopped appellant. This conclusion is further supported by McNeil's actions after he stopped appellant. After stopping a vehicle for a traffic offense a reasonable officer might conduct a "pat down" search of driver for the officer's own safety. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Instead, McNeil conducted an invasive search of appellant's pockets. *Cf., Sibron v. New York*, 392 U.S. 40, 65, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968) (police officer's invasive search of appellant's pockets made with intent to discover narcotics, rather than a self-protective pat down to discover weapons). McNeil's intentions were to investigate and search for evidence of drug activity.

### C.

Because appellant consented to McNeil's search following pretextual stop, we must consider the admissibility of the fruits of that search under the attenuation doctrine of *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). *See also, Juarez v. State*, 758 S.W.2d 772 (Tex.Cr.App. 1988). Under *Brown*, we examine four factors to determination whether the seizure of evidence is sufficiently attenuated from an officer's illegal detention:

(1) whether or not the accused received *Miranda* [*v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)] warnings;

(2) the temporal proximity of the arrest and the consent;

(3) the presence of intervening circumstances; and

(4) the purpose and flagrancy of police misconduct.

*Id.*, 422 U.S. at 604–605, 95 S.Ct. at 2261–2262. After applying these factors to the instant case, I find no attenuation between the illegal arrest and appellant's consent to search. First, McNeil did not advise appellant of his *Miranda* rights before requesting appellant's consent. The failure to advise the accused of his rights militates against a finding of attenuation. Second, appellant's consent to search occurred immediately after the pretextual arrest. Thus, the proximity in time between the arrest and the consent militates against attenuation. Third, there were no intervening circumstances between the pretextual arrest and appellant's consent. Thus, the third factor militates against attenuation.

Fourth, a pretextual arrest will always constitute flagrant police misconduct because, under the modified objective standard, a reasonable officer would not have made the arrest. The record reflects McNeil took advantage of an arrest situation to search for drugs. "This falls into the category of cases in which the arrest had a 'quality of purposefulness,' and the consent was sought to justify a search for evidence unrelated to the basis for the arrest." *Arcila v. State*, 834 S.W.2d 357, 366 (Tex.Cr.App.1992) (Baird, J., dissenting) (quoting *Brown*, 422 U.S. at 605, 95 S.Ct. at 2262). As with the aforementioned factors, this militates against attenuation. Thus, under *Brown*, appellant's consent was not attenuated from the pretextual arrest and the trial judge erred in failing to suppress the fruits of that search.

### VI.

The majority's intentional misreading of our precedent, and its elevation of the Court's convenience as the primary factor in an independent state constitutional analysis is a transparent attempt to avoid mature deliberation and thoughtful resolution of the issue presented. I believe when the issue is resolved in a principled fashion, art. I, § 9

requires the adoption of a modified objective standard to review pretextual arrests. Under that standard, the instant arrest was pretextual. Accordingly, I would reverse the judgment of the Court of Appeals and hold the evidence obtained as a result of the pretext arrest inadmissible.

Because the majority engages in a misleading and unprincipled constitutional interpretation in its haste to abolish the pretext arrest doctrine, I dissent.