# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

=========================

## ON MOTION FOR REHEARING

=========================

## NO. 03-99-00815-CR

**The State of Texas, Appellant**

**v.**

**Thomas Jarod Nash, Appellee**

**FROM THE DISTRICT COURT OF MILAM COUNTY, 20TH JUDICIAL DISTRICT
NO. 20,041-CR, HONORABLE CHARLES E. LANCE, JUDGE PRESIDING**

We withdraw our original opinion and judgment issued July 27, 2000 and substitute the following.

After being stopped for a window tint violation, Thomas Jarod Nash was indicted for possession of a controlled substance. *See* Tex. Health & Safety Code Ann. § 481.115(c) (West Supp. 2000). Nash filed a motion to suppress the evidence obtained after the search of his vehicle following the stop. The trial court granted the motion to suppress and the State appeals. *See* Tex. Code Crim. Proc. Ann. art. 44.01(a)(5) (West Supp. 2000). We reverse.

## Factual Background

On August 20, 1999, at approximately 10:30 p.m., Department of Public Safety Troopers Morgan and Del Bosque stopped Nash because they believed his car window tint was too dark. *See* Tex. Transp. Code Ann. § 547.613(a)(2) (West 1999). The troopers confirmed the window tint violated section 547.613 by testing the windows with a tint meter. According to the testimony, the tint on Nash's windows failed to comply with the statutory requirements. In addition, they discovered that Nash was driving without a license and that his vehicle inspection sticker had expired. Trooper Morgan recognized Nash's passenger, Omar Clark, whom he had previously arrested for possession of a controlled substance. After a warrants check, the troopers learned that Clark had outstanding warrants for his arrest in Dallas County.

Almost immediately after the stop, Nash exited the vehicle and was patted down by Trooper Morgan.[1] While Trooper Morgan talked with Nash, Trooper Bosque tested the tint with the tint meter. Trooper Morgan asked if there were drugs in the car and asked for consent to search the vehicle. Trooper Morgan testified that Nash consented to the search. Nash testified that he did not remember if he consented. Upon searching Nash's vehicle, the troopers found cocaine under the back seat and arrested Nash for possession. Nash moved for suppression of the evidence obtained from the search. The trial court granted the motion, dismissed the case and discharged Nash. The State did not request written findings of fact and conclusions of law. On appeal, the State argues only that the search was valid based on consent.

---

[1] The stop and search of Nash, his passenger and his vehicle were captured on videotape which the State introduced at the suppression hearing and which we have reviewed on appeal.

**Discussion**

***Standard of Review***

In reviewing a ruling on a motion to suppress, we are required to give almost total deference to a trial court's determination of historical facts that the record supports, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *see also Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). With mixed questions of law and fact which turn an evaluation of credibility and demeanor, we should also defer to the trial court's ruling. *Guzman,* 955 S.W.2d at 89. However, we review *de novo* the application of the law to the facts which do not turn on questions of credibility and demeanor. *Id.*

We set out in full the trial court's findings of fact and conclusions of law as orally stated on the record:

> The Court finds that the night of August 20th, 1999 was a hot summer night in Milam County, Texas.
>
> The Court finds that the air conditioner in the Defendant's automobile was inoperative.
>
> The Court finds that the windows in the Defendant's automobile were at least half way down prior to the stop, search and arrest in question.
>
> The Court finds that the window tint on the windows of the Defendant's automobile complied with applicable state law as evidenced by State Exhibit 1, a photograph of the Defendant's car and the seal of compliance affixed to the Defendant's car windows. That is additionally, buttressed by Trooper Chandler's testimony that there was no obvious illegal window tinting on July 30th, 1999.
>
> The Court finds that the arresting officer, Jimmy Morgan, had one prior arrest and one prior unfruitful stop of Omar Clark, the passenger in the Defendant's automobile.

3

The Court finds that Trooper Jimmy Morgan recognized Omar Clark as a passenger in the Defendant's automobile and confirmed his recognition by driving up beside the Defendant's automobile on the highway and having a stoplight focused on the Defendant Omar Clark.

The Court finds that immediately after the identification of Omar Clark was confirmed, Trooper Jimmy Morgan stopped the Defendant's automobile, searched the Defendant, his automobile and his passenger.

The Court concludes as a matter of law that the stopping of the Defendant was a pretexted stop. That the reason given for the stop, that is the illegal window tint, was a subterfuge.

The Court finds there was no probable cause to stop the Defendant.

The Court finds that any consent given by the Defendant was a mere acquiescence to authority, was not an informed consent.

Therefore, the Court rules that all evidence obtained from the unlawful stop and subsequent search and arrest is inadmissible in evidence and the Motion to Suppress is granted.

According to the stated findings and conclusions, the trial court granted Nash's motion to suppress because the initial stop was a "pretext" stop, and because the subsequent search of Nash's vehicle was not based on voluntary consent, but rather was an acquiescence to a claim of lawful authority. We begin with an analysis of the stop.

***Stop of Nash's Vehicle***

If an officer has reason to suspect that "criminal activity may be afoot," something less than probable cause is needed for an investigatory stop. *Terry v. Ohio*, 392 U.S. 1, 30 (1968); *McVickers v. State*, 874 S.W.2d 662, 664 (Tex. Crim. App. 1993) (officer may lawfully stop and detain a person for a traffic violation); *see also Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim.

4

App. 1992) (as long as an actual violation occurs, police are free to enforce laws and detain a person for that violation, regardless of usual practices or subjective reasons); *Howard v. State*, 888 S.W.2d 166, 172 (Tex. App.—Waco 1994, pet. ref'd) (stop is lawful if officer has reasonable suspicion of a traffic violation either on the automobile or by one of the automobile's occupants). "Something less than probable cause" is defined as reasonable suspicion. *See Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997). Reasonable suspicion requires "that there is something out of the ordinary occurring and some indication that the unusual activity is related to crime." *Viveros v. State*, 828 S.W.2d 2, 4 (Tex. Crim. App. 1992) (citing *Garza v. State*, 771 S.W.2d 549, 558 (Tex. Crim. App. 1989)). The articulated facts that support a temporary detention must be taken as a whole, and the reasonable suspicion formed based on the "totality of the circumstances." *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997); *see also United States v. Cortez*, 449 U.S. 411, 417 (1981). If the officer develops a reasonable suspicion that the motorist is engaged in, or soon will engage in criminal activity, he may continue to detain him for investigation unrelated to the initial traffic stop. *See Davis*, 947 S.W.2d 245.

Failure of window tint to meet certain light transmission and luminous reflectance is a misdemeanor for which a violator may be arrested without a warrant. *See* Tex. Transp. Code Ann. §§ 547.613(a), 543.001 (West 1999). It is well settled that a traffic violation committed in an officer's presence authorizes an initial stop. *Armitage v. State*, 637 S.W.2d 936, 939 (Tex. Crim. App. 1982); *see also United States v. Castillo*, 76 F.3d 1114, 1117 (10th Cir. 1996) (officer stopped driver for window tint violation and subsequent consent search revealed controlled substance).

Under *Guzman*, we must accord almost total deference to the following facts: (1) Nash's car windows were tinted; (2) the windows contained a sticker indicating compliance with state law; and (3) there was no obvious illegal window tint on July 30, 1999. We review de novo the following legal determinations: (1) Nash's window tint complied with state law; (2) the stop was a pretext stop; and (3) no probable cause existed to stop Nash.

### 1. Window Tint Complies with State Law

The trial court concluded that Nash's window tint complied with state law. While compliance with state law may be a relevant consideration, the central issue in this case is whether the troopers had reasonable suspicion to stop Nash's vehicle. This question turns on what the troopers knew at the time they decided to make the stop. Both Trooper Morgan and Trooper Bosque testified that they observed Nash's car from across an intersection and suspected the window tint was too dark. To confirm their suspicions, they pulled beside Nash's car and shined a light into the windows, further confirming their suspicions that the tint was too dark. The troopers then stopped the vehicle.

The trial court based its legal conclusion that the windows complied with state law on the presence of a compliance sticker on the windows and the testimony of Trooper Chandler, who had previously stopped Nash. In response to questioning, Trooper Chandler agreed that if a car has an obviously illegal window tint he would issue a citation.[2] The State presented evidence that

---

[2] Trooper Chandler also testified that he did not "know if the car had tint on it that night," that he did not remember anything about the windows on Nash's car, and that he did not remember observing a window tint violation.

6

compliance stickers on tinted windows are often unreliable. Moreover, even without such evidence, the presence of a compliance sticker does not establish the legality of the tint. Accepting the trial court's historical fact findings, we conclude compliance with state law is not supported by the record. Accordingly, we reject the trial court's conclusion that the tint complied with state law.

### 2. Pretext Stop

The trial court concluded that the troopers' stop of Nash was an invalid pretext stop. A pretextual seizure is one effectuated for an ulterior motive. *Crittenden v. State*, 899 S.W.2d 668, 671 (Tex. Crim. App. 1995). Under the objective approach towards claims of a pretextual seizure, a seizing officer's subjective motivation in effectuating a seizure is deemed irrelevant to the determination of whether the seizure was reasonable. *Id.* As pointed out by the court of criminal appeals, this approach is "nothing more than the complete abandonment of any sort of pretext doctrine." *Id.* An objectively valid traffic stop is not unlawful just because the detaining officers had some ulterior motive for making it. *Id.* at 674. Because the officer's subjective intent in effectuating the seizure is irrelevant, it did not constitute an illegal pretext. *Id.* at 671.

As set out above, the officers had an objective basis for making the stop. Any subjective motivation for making the stop is not relevant. Accordingly, we reject the trial court's conclusion of law that the stop was an illegal pretext stop.

### 3. Probable Cause to Stop

The trial court concluded that the troopers did not have probable cause to stop Nash. Reasonable suspicion, not probable cause, is required for a traffic stop. *See McVickers*, 874 S.W.2d

7

at 664. Accepting the trial court's findings as true, they do not lead to the conclusion that as a matter of law the troopers did not have reasonable suspicion to stop Nash's vehicle on the night of August 20, 1999, for a possible window tint violation. Troopers Morgan and Bosque testified that, based upon their observations, the window tint looked too dark. The trial court findings do not rebut their testimony. The trial court's findings are matters which were not known to Troopers Morgan and Bosque at the time of the stop. Accordingly, we conclude that the troopers had reasonable suspicion to stop Nash. We must now determine whether the troopers' warrantless search violated Nash's Fourth Amendment rights.

### Search of Nash's Vehicle

The trial court concluded that Nash did not voluntarily consent to the search but rather reacted to a show of authority. The State argues only that the search was valid based on Nash's consent to search. Our review then is limited to determining if the State's search of Nash's vehicle was a permissible, consensual search. *See State v. Aguirre*, 5 S.W.3d. 911, 913-14 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

Consent to search is one of the well-established exceptions to the constitutional requirements of both a warrant and probable cause. *Carmouche*, 10 S.W.3d at 331 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). Consent to search satisfies the Fourth Amendment if the consent is voluntary. *Carmouche*, 10 S.W.3d at 331 (citing *Ohio v. Robinette*, 519 U.S. 33, 40 (1996)). The consent must not be coerced, by explicit or implicit means, by implied threat or covert force. *Carmouche,* 10 S.W.3d at 331 (citing *Schneckloth*, 412 U.S. at 228)). The consent must be positive and unequivocal. *Allridge v. State*, 850 S.W.2d 471, 493 (Tex. Crim. App.

8

1991). Consent is not established by "showing no more than acquiescence to a claim of lawful authority." *Carmouche*, 10 S.W.3d at 331 (citing *Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968)). The State must show by clear and convincing evidence that the consent was freely given. *Carmouche*, 10 S.W.3d at 331. Whether consent is voluntary is a question of fact to be determined from the totality of the circumstances. *Schneckloth*, 412 U.S. at 227.

According to Nash's testimony, he was uncertain whether he gave consent for the search. Trooper Morgan testified that Nash consented to the search. While we are generally bound by the trial court's historical factual determinations, especially those based on credibility and demeanor, we are not so bound with the presence of a videotape. *See Carmouche*, 10 S.W.3d at 332. The videotape shows that once Trooper Morgan stopped Nash, Nash stepped out of the car and Morgan frisked him. Within minutes after Trooper Morgan stopped Nash, Trooper Morgan asked Nash if he could search the car. Nash responded: "Yes, sir." The videotape presents indisputable visual evidence supporting Trooper Morgan's testimony, contradicting Nash's equivocal testimony and the trial court's ruling. We cannot ignore the videotape evidence simply because Nash's testimony may, by itself, be read to support the trial court's ruling. *See Carmouche*, 10 S.W.3d at 332.

Trooper Morgan's request to search the vehicle came within the first few minutes of the stop. The troopers showed no display of force and did not coerce Nash into complying with the request. *Carmouche*, 10 S.W.3d 332-33 (consent given by defendant while surrounded by four officers with his back to a car is not voluntary); *see also LaDuke v. Nelson*, 762 F.2d 1318, 1329-30 (9th Cir. 1985) (consent by Hispanic farm workers was mere acquiescence to lawful authority where

9

search was accompanied by substantial show of force). Only Trooper Morgan had contact with Nash when asking for consent to search the car. Trooper Bosque was testing the window tint when Morgan asked Nash for consent to search. The troopers did not represent that they had a search warrant. *See Bumper*, 391 U.S. at 548-49. Nash responded immediately, positively and unequivocally to the request. *See Allridge*, 850 S.W.2d at 493. Viewing the totality of the circumstances, we conclude that the State satisfied its burden of showing by clear and convincing evidence that Nash voluntarily consented to the search of his vehicle.

### Conclusion

We conclude that the initial stop of Nash's vehicle was based on reasonable suspicion and was a valid stop. The subsequent search of Nash's vehicle was a permissible search pursuant to Nash's voluntary consent. Accordingly, we sustain the State's issue on appeal, reverse the trial court's ruling on the motion to suppress and its dismissal of the case, and remand the cause to the trial court. We overrule Nash's motion for rehearing.

_____

Jan P. Patterson, Justice

Before Justices Jones, Yeakel and Patterson

Reversed and Remanded

Filed: September 14, 2000

Do Not Publish