ACCEPTED
03-16-00055-CR
13798038
THIRD COURT OF APPEALS
AUSTIN, TEXAS
11/15/2016 12:27:41 PM
JEFFREY D. KYLE
CLERK

No. 03-16-00055-CR

In the Court of Appeals
for the Third District of Texas
at Austin

_____

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
11/15/2016 12:27:41 PM
JEFFREY D. KYLE
Clerk

No. 15-0302-K26
In the 26th Judicial District Court
Williamson County, Texas

_____

SUSAN ODEN
*Appellant*
v.
THE STATE OF TEXAS
*Appellee*

_____

STATE'S BRIEF IN RESPONSE

_____

Jana Duty
District Attorney
Williamson County, Texas

Daniel Sakaida
State Bar No: 24084601
Assistant District Attorney
405 Martin Luther King, Box 1
Georgetown, Texas 78626
(512) 943-1234
(512) 943-1255 (fax)
Daniel.sakaida@wilco.org

ORAL ARGUMENT NOT REQUESTED

## STATEMENT REGARDING ORAL ARGUMENT

The State does not request oral argument as the issues presented in this appeal are not novel and the record is straightforward. However, if the Court believes that oral argument would help resolve the matter, the State would request the opportunity to appear and argue.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT .............................................. ii

TABLE OF CONTENTS....................................................................................iii

INDEX OF AUTHORITIES............................................................................. iv

STATEMENT OF FACTS ..................................................................................1

SUMMARY OF THE ARGUMENT ...................................................................7

ARGUMENT .......................................................................................................7

   I.   There was reasonable suspicion for the underlying traffic stop.......................9

      A.   Appellant did not clearly preserve this issue for appellate review...........10

      B.   Even if preserved, there are sufficient facts to support the trial court's finding that there was objectively reasonable suspicion of a traffic offense for the underlying traffic stop...............................................................12

   II.  Officers had reasonable suspicion that Appellant possessed drugs to temporarily detain Appellant while waiting for a canine unit to arrive ........15

      A.   Evidence gained during the duration of an otherwise justifiable temporary detention may give rise to reasonable suspicion of a different offense ...16

      B.   The officers in this case did have reasonable suspicion to extend the temporary detention to wait for a canine unit in light of location, Appellant's dishonesty about her narcotics history, her visible nervousness starting after being asked about narcotics, and her passenger's substantial narcotics history...................................................................................17

PRAYER...........................................................................................................22

CERTIFICATE OF COMPLIANCE....................................................................23

CERTIFICATE OF SERVICE ...........................................................................23

# INDEX OF AUTHORITIES

**Cases**

*Anderson v. State*, 701 S.W.2d 868 (Tex. Crim. App. 1985) ...................................12

*Arguellez v. State*, 409 S.W.3d 657 (Tex. Crim. App. 2013) ....................................8

*Atwater v. City of Largo Vista*, 532 U.S. 318 (2001) ..............................................12

*Bouchillon v. State*, 540 S.W.2d 319 (Tex. Crim. App. 1976) ...............................10

*Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010) .....................................7

*Crittenden v. State*, 899 S.W.2d 668 (Tex. Crim. App. 1995) ........................... 9, 15

*Darcy v. State*, 488 S.W.3d 325 (Tex. Crim. App. 2016).......................................10

*Elizondo-Vasquez v. State*, No. 03-12-00774-CR, 2014 Tex. App. LEXIS 9174 (Tex. App.—Austin Aug. 20, 2014, pet. ref'd) (mem. op., not designated for publication) ........................................................................................................13

*Floyd v. State*, No. 12-07-00391-CR, 2008 Tex. App. LEXIS 5413 (Tex. App.—Tyler July 23 2008, no pet.) (mem. op., not designated for publication)......12

*Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001) .................................8

*Gougeau v. State*, 209 S.W.3d 713 (Tex. App.—Houston [14th Dist.] 2006, no pet.) ...............................................................................................................17

*Hamal v. State*, 390 S.W.3d 302 (Tex. Crim. App 2012)................................ 19, 20

*Illinois v. Wardlow*, 528 U.S. 119 (200).................................................................19

*Indianapolis v. Edmond*, 531 U.S. 32 (2000) ........................................................16

*Moreno v. State*, No. 03-14-00596-CR, 2016 Tex. App. LEXIS 6868 (Tex. App.—Austin June 30, 2016, no pet.) (mem. op., not designated for publication) ..17

*Moses v. State*, 105 S.W.3d 622 (Tex. Crim. App. 2003) ........................................8

*Olguin v. State*, No. 06-13-00171-CR, 2014 Tex. App. LEXIS 1272 (Tex. App.—Texarkana Feb. 25, 2014, pet. ref'd) (mem. op., not designated for publication) ...............................................................................................................12

*Rodriguez v. United States*, 135 S.Ct. 1609 (2015) ............................................ 16, 18

*State v. Ross*, 32 S.W.3d 853 (Tex. Crim. App. 2000) ............................ 7, 8, 15, 20

*Terry v. Ohio*, 392 U.S. 1 (1968) .............................................................................8

*Turrubiate v. State*, 399 S.W.3d 147 (Tex. Crim. App. 2013) ........................... 8, 20

*United States v. Arvizu*, 534 U.S. 266 (2002) ................................................. 8, 19, 21

*Wade v. State*, 422 S.W.3d 661 (Tex. Crim. App. 2013) ...........................................9

*Zillender v. State*, 557 S.W.2d 515 (Tex. Crim. App. 1977)....................................10

**Statutes**

Tex. Transp. Code § 547.322.................................................................................12

**Rules**

Tex. R. App. P. 33.1...............................................................................................10

TO THE HONORABLE COURT OF APPEALS:

<u>STATEMENT OF FACTS</u>

The State wishes to clarify the following facts to supplement those addressed in Appellant's brief.

*Procedural History*

Prior to Appellant's plea and this appeal, she filed a motion to suppress on July 20, 2014, and a hearing on that motion was held on September 4, 2015.[1] At that hearing, the State only called one witness, Round Rock Police Officer Josh Chadney, and submitted a video recording from the cameras mounted to Officer Chadney's patrol vehicle.[2] The trial court denied Appellant's motion to suppressing a written motion entered on October 12, 2015,[3] Appellant plead guilty on November 12, 2015,[4] while reserving the right to appeal the suppression issue,[5] and this appeal follows.

---

[1] CR 3.

[2] RR II, State's Exhibits 1 (video marked as "Joshua Chadney, 11-0079, 2015-02-09 22:08:07" in player provided on disk in 1, which is contained in case marked State's Exhibit 1A).

[3] CR 20.

[4] CR 22-23.

[5] CR 22-23, 30; RR IV:6.

1

*Traffic Violation*

On February 9, 2015, Officer Chadney was on patrol in Round Rock, in a marked patrol vehicle, when he first caught sight of Appellant's vehicle, a 2001 Dodge pickup, at about 10 in the evening.[6] Officer Chadney observed Appellant leaving Candlewood Suites, which he knew from his experience to be a "high crime area known for narcotics use."[7] Shortly thereafter, Officer Chadney observed that Appellant's license plate was insufficiently illuminated, and while on the frontage road for I-35, he turned off the headlights on his patrol car to confirm his initial observation.[8] He specifically testified that while the vehicle had two lights which were supposed to illuminate the license plate, they were not emitting enough light to make the license plate visible at 50 feet away.[9] Barely a minute after the recording begins, Officer Chadney activated his overhead lights and initiated his traffic stop of Appellant from the number one lane on I-35, with Appellant subsequently exiting

---

[6] RR II:6; *see also* State's Exhibit 1 with the video beginning at 22:08:07 (time on this exhibit is notated in absolute time, on a 24-hour clock).

[7] RR II:6-8 (Officer Chadney noting that he had personally made narcotics related arrests in and around that hotel).

[8] RR II:25; *see also* State's Exhibit 1 from roughly 22:08:12 to 22:08:19 (showing Appellant's truck ahead and to the left of Officer Chadney's patrol vehicle with Officer Chadney's headlights clearly turned off at the beginning, and back on at the end).

[9] RR II:30-31.

the interstate, and coming to a stop in a parking lot off the frontage road barely two minutes after the start of the video.[10]

### *Traffic Stop and Investigation*

Officer Chadney's lapel microphone was not recording for the first few minutes of the traffic stop, but was turned on about six minutes after the stop.[11] However, he testified at the suppression hearing that when he first made contact with Appellant, he essentially conducted the encounter as a routine traffic stop, including requesting Appellant's driver's license, proof of insurance, and what Appellant was doing that night.[12] Appellant confirmed that she had just left Candlewood Suites, and stated that while she had been previously arrested, it was only for possession of stolen items.[13] When he sought to confirm this, dispatch advised that her criminal history indicated that she had been previously arrested for narcotics.[14]

Once asking Appellant if she had any narcotics on her, Officer Chadney observed that she became "more nervous."[15] Officer Chadney testified that he had met Appellant "a couple weeks prior" when she was struck by a drunk driver, and

---

[10] RR II:6-7; State's Exhibit 1 at 22:09:00 (lights initiated), and 22:10:09 (vehicles stopped).

[11] State's Exhibit 1 at 22:15:45.

[12] RR II:8.

[13] RR II:8-9.

[14] RR II:10.

[15] RR II:10.

even after that accident, she "wasn't nervous at all."[16] Likewise, Appellant was not nervous the night of the instant offense until Officer Chadney specifically brought up the subject of narcotics.[17] At that point, Officer Chadney also observed her heart begin to race, specifically seeing the artery on the left of Appellant's neck pulsating more rapidly.[18] Officer Chadney testified that he was trained to specifically look for that artery to see a rising heart rate, particularly since it is easily visible while standing outside a driver's door during a traffic stop, as in the instant stop.[19] While Appellant attacked how visible the artery should have been given Appellant's hair, the video exhibit is not of a high enough quality to determine if the artery was actually visible, and Officer Chadney did not recant his testimony.[20]

Officer Chadney returned to his vehicle briefly, at which point he "finagled" with the recording equipment to get his lapel microphone recording shortly before 10:16.[21] Then, he had Appellant exit her vehicle and observe for herself the defective lights. He informed Appellant that her aftermarket license plate lights were not

---

[16] RR II:12.

[17] RR II:12; *see also* State's Exhibit 1 at 22:20:30 (several minutes after the initial interview, Officer Chadney directly asked Appellant why she was so nervous).

[18] RR II:10-11.

[19] RR II:10-11.

[20] RR II:27.

[21] RR II:16; State's Exhibit 1 at 22:15:45.

4

emitting enough light, and she replied "oh yeah, they're not."[22] He also informed her that by statute the lights are required to illuminate the plate so that it is clearly legible from 50 feet away, and she affirmed that she could see how dim at least one of the lights was.[23] Officers were still waiting on driver license returns after this conversation.[24]

Officer Chadney then started questioning Ms. Browning, Appellant's passenger.[25] Ms. Browning advised that she had been arrested for possession of marijuana and possession of methamphetamine.[26] Her demeanor also became much more nervous when Officer Chadney directly asked if there were narcotics in the vehicle.[27] Officer Chadney was able to run Ms. Browning's criminal history, and found that she had been arrested on multiple occasions for possessing controlled substances.[28]

At about 10:25, after being denied consent to search the truck, Officer Chadney told Appellant that he was calling a drug dog, and that she was not free to

---

[22] State's Exhibit 1 at 22:17:00.

[23] State's Exhibit 1 at 22:17:00.

[24] State's Exhibit 1 at 22:17:30.

[25] RR II:12-13; State's Exhibit 1 at 22:21:00.

[26] RR II:13.

[27] RR II:13 (Officer Chadney testifying that, "she exhibited signs that I know to be nervous behavior"); State's Exhibit 1 at 22:23:00 (Officer Chadney asking Ms. Browning why she was so nervous).

[28] RR II:13.

leave the scene.[29] This was barely 15 minutes after Appellant was pulled over by Officer Chadney at 10:10.[30] When the dog arrived, it gave a positive alert for the presence of drugs. The ensuing search of the truck and Appellant's purse revealed methamphetamine,[31] and Appellant was arrested for possession of the same. A search of Ms. Browning's person uncovered more methamphetamine.[32]

---

[29] RR II:15; State's Exhibit 1 at 22:25:00.

[30] State's Exhibit 1 at 22:10:09 (vehicles stopped).

[31] RR II:19-21.

[32] RR II:21-22.

## SUMMARY OF THE ARGUMENT

First, the trial court was entitled to conclude that Officer Chadney had sufficient reasonable suspicion to initiate the traffic stop based on insufficient illumination of Appellant's rear license plate. The video admitted into evidence of Appellant's interaction with Officer Chadney corroborates his testimony, even if Appellant's assertion that it was a "pretextual" stop was true. Second, the trial court was also entitled to conclude that Officer Chadney had sufficient reasonable suspicion to detain Appellant while waiting for a canine unit to arrive and perform an open air sniff for the odor of controlled substances.

## ARGUMENT

This Court should review a trial court's denial of a motion to suppress for an abuse of discretion, and apply a bifurcated standard of review, affording almost complete deference to the trial court's determination of historical facts, particularly when based on assessments of credibility and demeanor.[33] However, this Court should review de novo whether the facts are sufficient to give rise to reasonable suspicion.[34] Reversal of a trial court decision regarding admissibility of evidence

---

[33] *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *State v. Ross*, 32 S.W.3d 853 (Tex. Crim. App. 2000) (trial judge may believe or disbelieve all or some of a witness's testimony).

[34] *Id.*

should be rare "and only after a clear abuse of discretion."[35] This Court should give "almost total deference" to the trial court, particularly when the only witness at the suppression hearing was the arresting officer, and did not make written finding or conclusions.[36] When the trial court does not make express findings of fact, this Court reviews the evidence in the light most favorable to the trial court's ruling, assuming it made findings that are consistent with its ruling and are supported by the record.[37] Finally, the trial court's ruling should be upheld under any applicable theory of law.[38]

United States courts permit law enforcement officers to stop and briefly detain a person for investigative purposes on the basis of reasonable suspicion without violating the protections of the Fourth Amendment.[39] In Texas, reasonable suspicion exists where the officer has "specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity."[40] This standard is wholly objective, made by evaluating the totality of the circumstances,[41] and specifically disregards the subjective intent and motives of the

---

[35] *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

[36] *Ross*, 32 S.W.3d at 855-56.

[37] *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013).

[38] *Arguellez v. State*, 409 S.W.3d 657, 662-63 (Tex. Crim. App. 2013).

[39] *Terry v. Ohio*, 392 U.S. 1 (1968).

[40] *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001).

[41] *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

officer.[42] Contrary to Appellant's claims,[43] this is true even if the encounter is "pretextual" and the officer effectuated the stop for a purely ulterior motive so long as there is an objectively valid basis for the stop.[44]

## I.  There was reasonable suspicion for the underlying traffic stop

In her first claimed ground for relief, Appellant claims that the traffic stop in this case was illegal. Specifically, Appellant argues that "there does not appear to have been a traffic stop based on the fifty food rule for license plate visibility."[45] It appears that Appellant claims that the only reason that she was pulled over was because she was in a "high crime area."[46] This is false.

---

[42] *Wade v. State*, 422 S.W.3d 661 (Tex. Crim. App. 2013).

[43] Brief for Appellant at 11 ("Just as federal case law does not allow pretext stops, state law also does not allow evidence from a pretext stop to be admitted").

[44] *Crittenden v. State*, 899 S.W.2d 668, 673-74 (Tex. Crim. App. 1995) (holding that, "a stop will not be invalidated based on the subjective motivation of a police officer so long as there is an objectively valid basis for the stop," and, "an objectively valid traffic stop is not unlawful under Article I, § 9, just because the detaining officer had some ulterior motive for making it").

[45] Brief for Appellant at 9.

[46] Brief for Appellant at 10-11.

**A. Appellant did not clearly preserve this issue for appellate review**

It is not clear from the record that Appellant preserved this claim at the trial court. To preserve a claim for appeal, the objecting party must enter a timely, specific objection, and obtain an adverse ruling from the lower court.[47] This requirement affords the trial judge an opportunity to review the objection, and may also afford opposing counsel an opportunity to remove the objection.[48] Given the fundamental and systemic nature of preservation, an appellate court "may not *reverse* a judgement of conviction without first addressing any issue of error preservation."[49]

In this case, the broiler plate motion to suppress presented to the trial court, its accompanying memorandum of law, and the arguments made at the suppression hearing all centered on the reasonableness of Appellant's detention while waiting for the drug dog, not the reasonableness of the underlying traffic stop.[50] The trial brief discussed reasonable suspicion, but mostly in the context of anonymous tips.[51] In arguments at the suppression hearing, Appellant never argued that the traffic stop

---

[47] Tex. R. App. P. 33.1; *see also Zillender v. State*, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977); *Bouchillon v. State*, 540 S.W.2d 319, 322 (Tex. Crim. App. 1976) (objection that argument went outside the record was not sufficient to preserve an appellate claim that the argument was a comment on appellant's failure to testify).

[48] *Zillender*, 557 S.W.2d at 517.

[49] *Darcy v. State*, 488 S.W.3d 325, 327-28 (Tex. Crim. App. 2016) (emphasis in original).

[50] *See* CR 15 (Motion to Suppress, filed July 20, 2015), CR 18 (Trial Brief, filed on Sep., 04, 2015).

[51] CR 18-19.

itself was problematic, and essentially conceded that the traffic stop was legitimate.[52]

In fact, after briefly discussing the reasonable suspicion standard, instead of discussing the reasonable suspicion for the precipitating traffic stop, Appellant's attorney immediately argued that, "in this case there's only three things that the officer relied on for reasonable suspicion and detained Ms. Oden and her passenger after the initial traffic stop."[53] Likewise, he closed with the following argument, essentially conceding the legality of the traffic stop:

> So the way this should have gone down, he should have pulled her over. He should have written her a ticket for the defective license plate light and moved on because the questions that he asked her certainly didn't rise to the level and create a reasonable suspicion to detain her after that point.[54]

Appellant's codefendant's attorney then gave the trial court a review of *Rodriguez* and argued about the reasonableness of extending the detention, again without disputing the legality of the underlying traffic stop.[55] Therefore, the nature of Appellant's motion and argument were not sufficiently specific enough to demonstrate to the trial court or to the State that Appellant was objecting to the traffic stop in this case and not merely the extension of the detention while waiting for drug dog.

---

[52] *See* RR II:45-50.

[53] RR II:45-46.

[54] RR II:46.

[55] RR II:47-50.

11

**B. Even if preserved, there are sufficient facts to support the trial court's finding that there was objectively reasonable suspicion of a traffic offense for the underlying traffic stop**

Even if preserved, Appellant failed to make a sufficient record for this Court to overturn the trial court's implicit ruling that the traffic stop was constitutional. Traffic violations are sufficient grounds for a traffic stop, temporary detention to investigate the violation, and in some cases even arrest.[56] The Texas Transportation Code requires that rear license plates be clearly illuminated and legible. Specifically,

> (f)  A taillamp or a separate lamp shall be constructed and mounted to emit a white light that:
> (1)  illuminates the rear license plate; and
> (2)  makes the plate clearly legible at a distance of 50 feet from the rear.[57]

The plain language of the statute indicates that there is an offense even if the vehicle has functional lights installed, but they fail to illuminate the plate so that it is clearly legible at the prescribed distance.[58] A vehicle does not become immune to a drug

---

[56] *See Atwater v. City of Largo Vista*, 532 U.S. 318 (2001) (stop and arrest for the Class C fine-only offense of driving without a seatbelt was reasonable under the circumstances); *Anderson v. State*, 701 S.W.2d 868 (Tex. Crim. App. 1985) (upholding traffic stop for driving without headlights).

[57] Tex. Transp. Code § 547.322.

[58] *See* Tex. Transp. Code § 547.322(f)(2); *see, e.g.*, *Olguin v. State*, No. 06-13-00171-CR, 2014 Tex. App. LEXIS 1272 (Tex. App.—Texarkana Feb. 25, 2014, pet. ref'd) (mem. op., not designated for publication) (while Lexis may indicate that this opinion was withdrawn later, the February 25th opinion is the final one by the court) (not binding, but persuasive in that the court upheld a traffic stop even when the vehicle had a functional but insufficient light on the license plate); *Floyd v. State*, No. 12-07-00391-CR, 2008 Tex. App. LEXIS 5413, at *6-7 (Tex. App.—Tyler July 23 2008, no pet.) (mem. op., not designated for publication) (no contested fact issue when officer testified that there was a very dim light on the license plate, and that it was not legible from 50 feet away).

investigation simply because it is initially stopped because of a defective license plate light.[59]

The issue in this case is not whether Appellant's lights were functional or not, it is that the lights were simply not bright enough to fully illuminate the license plate to make it legible from 50 feet. Officer Chadney testified that he initiated the traffic stop because of the defective license plate light.[60] He also testified and Appellant herself confirmed on the video that, "oh yeah, they're not" emitting enough light.[61]

Appellant asserts that Officer Chadney could not possibly have pulled her over for this reason as he followed her truck for "five minutes" without any action.[62] Instead, the record reflects that less than a minute elapses between the start of the video,[63] where Appellant is seen driving on the frontage road making her way to the Interstate, and when Officer Chadney initiates his overhead lights immediately behind Appellant on the Interstate.[64] Likewise, while Appellant incorrectly

---

[59] *See, e.g.*, *Elizondo-Vasquez v. State*, No. 03-12-00774-CR, 2014 Tex. App. LEXIS 9174 (Tex. App.—Austin Aug. 20, 2014, pet. ref'd) (mem. op., not designated for publication) (not binding, but persuasive in that this Court upheld a stop for defective license plate illumination which resulted in finding 190 pounds of marijuana).

[60] RR II:6-7 (on direct examination); RR II:30-31 (on cross examination, stating that while both lights were working, "they weren't emitting enough light that would cover them under the Texas state statute").

[61] State's Exhibit 1 at 22:17:00.

[62] Brief for Appellant at 10.

[63] State's Exhibit 1 at 22:08:07.

[64] State's Exhibit 1 at 22:09:00.

13

maintains that "the officer did not turn off his lights at any point during the time he was following the truck,"[65] Officer Chadney explicitly testified that he did exactly that.[66] The record supports his testimony: the following image extracted from his dash camera recording demonstrates that Officer Chadney did in fact have his headlights off for several seconds while following Appellant.[67] Appellant's vehicle can be seen slightly ahead and to the left in the following image:[68]



---

[65] Brief for Appellant at 10.

[66] RR II:25-26 (Officer Chadney testifying: "I actually turned my headlights off in order to give them the benefit of the doubt and verify that, you know, it's not emitting enough light to be – to be seen by 50 feet").

[67] State's Exhibit 1 at 22:08:12 to 22:08:19.

[68] Extracted from State's Exhibit 1 at 22:08:17, without adjusting the software's quality settings for contrast or brightness.

14

Due to the resolution of the video and the light distortion inherent in filming at night, it is not possible to clearly determine from the footage how legible Appellant's rear license plate actually was. It does, however, corroborate Officer Chadney's testimony regarding his actions and Appellant's admission of the offense, and does not contradict the trial court's implicit finding that he had reasonable suspicion to initiate a traffic stop on Appellant's truck.

In this case, Officer Chadney had sufficient, articulable facts that Appellant's license plate was not sufficiently illuminated, and that it was not clearly legible at a distance of 50 feet. The trial court was entitled to find credible his testimony that he directly observed said violation as well as Appellant's admission. Even if this was a pretextual stop, there still is an objectively reasonable basis for the stop,[69] and therefore, the trial court properly denied Applicant's motion to suppress as to the traffic stop in this case.[70]

## II. Officers had reasonable suspicion that Appellant possessed drugs to temporarily detain Appellant while waiting for a canine unit to arrive

In her second alleged ground for relief, Appellant asserts that this Court should disregard Texas cases regarding drug dog sniff searches and find that the drug

---

[69] *Crittenden v. State*, 899 S.W.2d 668, 673-74 (Tex. Crim. App. 1995) (pretext stops with an objectively reasonable purpose are permissible).

[70] *See Ross*, 32 S.W.3d at 855-56 (trial court should be afforded almost total deference on appeal).

dog search was unconstitutional as because it "was not justified by reasonable suspicion related to the license plate light" and "calling in a drug dog is not reasonably related to a license plate light."[71] The State construes these arguments to mean that Appellant is asserting that the officers did not have reasonable suspicion to detain her while waiting for a drug dog to arrive and perform an open-air sniff search. Her arguments are misplaced, and in any case fail under the facts of this case.

## A. Evidence gained during the duration of an otherwise justifiable temporary detention may give rise to reasonable suspicion of a different offense

As an initial matter, reasonable suspicion of one offense may be developed during a traffic stop for another offense, so long as they do not extend the detention to do so. Appellant seems to argue that the dog sniff and extension for it was unreasonable because it was not justified given the reason for the stop.[72]

"Beyond determining whether to issue a traffic ticket, an officer's mission includes 'ordinary inquiries incident to [the traffic] stop'."[73] However, officers are not prohibited from exploring any new offenses they may discover during the stop. To the contrary, during the time it takes to complete those inquiries, an officer may

---

[71] Brief for Appellant at 14.

[72] Brief for Appellant at 14.

[73] *Rodriguez v. United States*, 135 S.Ct. 1609, 1615 (2015) (quoting *Indianapolis v. Edmond*, 531 U.S. 32, 40-41 (2000)).

16

also develop reasonable suspicion of another offense, thereby expanding the scope of the investigation to include the new offense.[74]

In this case, Officer Chadney's investigation included those sorts of "ordinary inquiries" regarding the insufficiently illuminated license plate until at least the point where he received driver license returns.[75] During that time, he made most if not all of the observations justifying extending the detention pending a canine unit. Therefore, Officer Chadney rightly expanded the scope of his investigation from the traffic offense to a narcotics-related investigation.

**B. The officers in this case did have reasonable suspicion to extend the temporary detention to wait for a canine unit in light of location, Appellant's dishonesty about her narcotics history, her visible nervousness starting after being asked about narcotics, and her passenger's substantial narcotics history**

Secondly, officers did have reasonable suspicion to believe that drugs were present in the vehicle, and that reasonable suspicion provided them with a basis to extend the stop to wait for a drug dog to arrive and perform an open-air sniff search in compliance with *Rodriguez*. While a dog sniff is not the sort of "ordinary inquiry,"

---

[74] *See, e.g.*, *Gougeau v. State*, 209 S.W.3d 713, 719 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (not binding, but persuasive in that it reaches this conclusion after summarizing the law from other cases, and has been cited for this principle by this Court in *Moreno v. State*, No. 03-14-00596-CR, 2016 Tex. App. LEXIS 6868, at *6 (Tex. App.—Austin June 30, 2016, no pet.) (mem. op., not designated for publication)).

[75] State's Exhibit 1 at 22:17:30 (officers still waiting on driver license returns).

normally relevant to a traffic stop, one may be conducted so long as it does not "prolong" the traffic stop or when the officer has developed reasonable suspicion that there are illicit substances in the vehicle.[76] In other words, *Rodriguez* only prohibits drug dog sniffs if they extend an otherwise-completed traffic stop where no other reasonable suspicion exists which would justify the drug dog sniff.[77] When an officer develops reasonable suspicion that controlled substances may be in a vehicle before extending a traffic stop, he may so extend the stop for a reasonable length of time to wait for a canine unit to arrive and conduct a sniff around the vehicle.

In the instant case, Officer Chadney observed and testified about numerous observations he used to form reasonable suspicion that there were illegal drugs in Appellant's truck the night of the instant offense. For example;

- First, Officer Chadney initially observed Appellant's truck leaving Candlewood Suites, an area "well known" to law enforcement to be a "high crime area known for narcotics use."[78] Officer Chadney himself had made arrests coming out of that hotel for narcotics-related activity.[79] While

---

[76] *Rodriguez*, 135 S.Ct. at 1616-17 (explicitly remanding the case back to the Eighth Circuit to determine if there was individualized suspicion to extend the detention).

[77] *Rodriguez*, 135 S.Ct. at 1614.

[78] RR II:8-9.

[79] RR II:8-9.

Appellant is correct that this fact alone would not give him reasonable suspicion to imitate or extend the traffic stop, it may be considered as one of the facts he was aware of at the initiation of the detention.[80]

- Second, Appellant lied about her criminal history, intentionally omitting any reference to her narcotics arrest, and drawing attention to her arrest for a theft-related offense.[81]

- Third, Appellant became visibly nervous only after Officer Chadney inquired as to the presence of illegal narcotics in the truck.[82] This observation was bolstered by his testimony that he had encountered Appellant only a couple of weeks before the instant stop when her truck had been struck by a drunk driver. In that encounter Appellant "wasn't nervous at all," and was calm, even after being involved in a traffic accident.[83] The night of the instant offense, Appellant's demeanor only changed after Officer Chadney asked if she had narcotics with her.[84]

---

[80] *See, e.g.*, *Illinois v. Wardlow*, 528 U.S. 119, 123-24 (200) (location in a "high crime area" considered as a factor in upholding traffic stop); *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (in evaluating reasonable suspicion, courts may allow officers to draw on their own training and experience).

[81] RR II:9-10 (Officer Chadney only found out about the narcotics history after requesting Appellant's history from dispatch); *see e.g. Hamal v. State*, 390 S.W.3d 302, 308 (Tex. Crim. App 2012) ("Deception regarding one's own criminal record has also been recognized as a factor that can contribute to reasonable suspicion,")

[82] RR II:11-12.

[83] RR II:12.

[84] RR II:12.

Officer Chadney directly questioned Appellant on her nervousness on video that night, and Appellant expressed that she just wanted to leave.[85]

- Fourth, Officer Chadney testified that he observed Appellant's pulse begin to race at that point as well, most visibly seen in the artery on the left side of her neck.[86] Appellant attacks this observation at the hearing and on appeal,[87] but as referenced above, the video in this case is not of a high enough quality to observe how Appellant's hair was arranged while she was seated in the truck, or indeed if it would have obscured Officer Chadney's view of her artery.[88] Even if this is construed as a conflict in the evidence, the trial court was entitled to resolve the conflict in favor of Officer Chadney's observation and testimony, particularly after being able to determine that he was credible during live testimony.[89]

- Fifth, Appellant's passenger and co-defendant also Ms. Browning was initially compliant, but exhibited the same sort of nervousness and change

---

[85] State's Exhibit 1 at 22:20:30.

[86] RR II:10-11; *see e.g. Hamal* 390 S.W.3d at 308 (citing past case law to note that nervousness, prior criminal record, and deception about that record are all factors that a court may consider in evaluating reasonable suspicion).

[87] RR II:16; Brief for Appellant at 11.

[88] RR II:16; State's Exhibit 1 at 22:15:45

[89] *See, e.g., State v. Ross*, 32 S.W.3d 853 (Tex. Crim. App. 2000) (trial judge may believe or disbelieve all or some of a witness's testimony); *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013) (reviewing courts should assume the trial court made findings consistent with its ruling and supported by the record).

in demeanor when Officer Chadney asked her about narcotics, including that her heart began to race and her breathing became labored.[90]

- Sixth, Ms. Browning also had a history of arrests, and "almost her entire criminal history" was comprised of narcotics offenses, primarily possession of marijuana and methamphetamine.[91]

While none of these observations alone would constitute reasonable suspicion of narcotics, when seen objectively in their totality,[92] the trial court did not abuse its discretion in ruling that there was reasonable suspicion for officers to extend the temporary detention while waiting for a canine unit to arrive. Further, the total length of detention was certainly reasonable, with less than thirty minutes passing between the start of the traffic stop and the arrival of the drug dog.[93] Similarly, only about thirteen minutes elapsed between Officer Chadney telling Appellant he was calling a canine unit and she was not free to leave, and when that unit began its sniff.[94] Therefore, since the traffic stop in this case was proper and properly extended to

---

[90] RR II:13 (Officer Chadney testifying that, "she exhibited signs that I know to be nervous behavior"); State's Exhibit 1 at 22:23:00 (Officer Chadney asking Ms. Browning why she was so nervous).

[91] RR II:13.

[92] *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (court *must* evaluate reasonable suspicion under the totality of the circumstances, including allowing officers to draw on their own training and experience).

[93] State's Exhibit 1 at 22:09:00 (lights initiated), 22:10:09 (vehicles stopped); 22:17:30 (still waiting on driver license returns); and 22:38:00 (drug dog begins sniff around truck).

[94] State's Exhibit 1 at 22:25:00 (Appellant being detained pending canine unit); and 22:38:00 (drug dog begins sniff around truck).

wait for a canine unit based on reasonable suspicion of possession of narcotics, Appellant's conviction should be affirmed on appeal.

<u>PRAYER</u>

Wherefore, the State respectfully requests that this Court affirm the conviction.

Respectfully submitted,

**Jana Duty**
District Attorney
Williamson County, Texas

<u>/s/ Daniel Sakaida</u>
Daniel Sakaida
Assistant District Attorney
State Bar Number 24084601
405 Martin Luther King #1
Georgetown, Texas 78626
(512) 943-1248
(512) 943-1255 (fax)
daniel.sakaida@wilco.org

22

CERTIFICATE OF COMPLIANCE

I certify that, after allowable exclusions, the State's brief contains 4,901 words in compliance with Rule 9.4 of the Texas Rules of Appellate Procedure.

__/s/ Daniel Sakaida_____
Daniel Sakaida


CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2016, I electronically filed the foregoing document with the clerk of the court for the Texas Court of Criminal Appeals, using the efile.txcourts.gov system.  Via that system, a "Notice of Electronic Filing" was sent to Appellee's appellate attorney of record, Lisa Mims, P.O. Box 141218, Austin, Texas, 78714-1218, at lisamariemims@gmail.com

_/s/ Daniel Sakaida_____
Daniel Sakaida